FEDERICO HERNÁNDEZ DENTON, ETC., demandante y recurrente, *v.* JUAN QUIÑONES DESDIER, demandado y recurrido.

*Número:* O-73-367        *Resuelto:* 1ro. de mayo de 1974

*Pedro J. Saade Lloréns, Mario Batiz Santos, Wilfredo López Irizarry, Juan M. Lancara Reyes, Samuel Martir Santiago, Yusif Mafuz Blanco, Pedro Juan Torres Acevedo y Rosa E. Palou,* abogados del recurrente; el recurrido no compareció.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La controversia presente gira sobre el alcance de los poderes de la antigua Administración, hoy Departamento de Asuntos del Consumidor para adjudicar, sujeto a revisión por los tribunales, querellas entre contratistas y compradores de viviendas defectuosas. Diversas Salas del Tribunal Superior han adoptado posiciones opuestas sobre el asunto y está en la actualidad pendiente un número de casos en dicho foro en espera de una directriz definitiva.

Contra el recurrido, un contratista, se interpuso en agosto de 1971 una querella ante la Administración de Servicios al Consumidor (ASERCO) por varios defectos alegadamente incurridos en la construcción de determinadas ampliaciones al hogar de la reclamante. Luego de notificación y vista, el organismo administrativo concluyó que el contratista incumplió el contrato y le ordenó reparar las filtraciones y otras imperfecciones existentes o entregarle $1,806.75 a la querellante, cantidad representativa a juicio de la agencia del costo de las reparaciones.

El contratista no acató la resolución del Director de ASERCO y éste recurrió al Tribunal Superior, bajo el procedimiento que fija el Art. 7(c) de la Ley Núm. 148 del 27 de junio de 1968, 23 L.P.R.A. sec. 1007(c), para poner en vigor su orden. Tras varios incidentes, el Tribunal Superior eventualmente falló que ASERCO carecía de facultad para adjudicar derechos antes del 30 de junio de 1972, fecha en que se añadió el inciso (g) al Art. 5 de la citada Ley Núm. 148,

23 L.P.R.A. sec. 1005(g).([1]) Se revocó, por tanto la decisión administrativa.

■ No le asiste razón a la ilustrada Sala sentenciadora. La Administración de Servicios al Consumidor tuvo siempre, antes y después de la adición del referido inciso (g), poder para dictar órdenes correctivas como la presente. Tal poder puede ejercerse hoy, por supuesto, por el Departamento de Asuntos del Consumidor, dada la transferencia de poderes de la antigua agencia a la presente. Ley Núm. 5 de 23 de abril de 1973, Art. 5(A)(a).

La cuestión que nos ocupa debe examinarse dentro del amplio marco del desarrollo del derecho administrativo y de las nuevas corrientes en la administración de la justicia. Es a veces difícil extraer el significado de un estatuto ateniéndonos tan sólo a sus términos escuetos, sin referencia a las circunstancias, advertibles por los tribunales, que lo producen.

La antigua Ley de ASERCO, 23 L.P.R.A. sec. 1004(8) proveía que dicha agencia tendría a su cargo, entre otras, las siguientes funciones básicas:

"(8) Atender e investigar las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía, *tomar la acción correctiva que proceda en derecho*, y referir dichas querellas, cuando fuere necesario, al organismo, agencia o departamento correspondiente, promoviendo, a tono con las leyes y reglamentos en vigor, la más rápida y efectiva solución de los asuntos planteados." (Bastardillas nuestras.)

---

([1]) Dicho inciso dispone:

"La Administración de Servicios al Consumidor tendrá los siguientes poderes:

. . . . . . . .

"(g) Resolver y adjudicar las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía que envuelvan algún acto o práctica injusta o engañosa incluyendo, pero sin limitar, el incumplimiento de una oferta, garantía o servicio o la publicación de anuncios falsos o engañosos."

La frase subrayada provee adecuada base para la acción tomada por ASERCO.

Adviértase, para aludir por ahora únicamente al material interno disponible para interpretar el estatuto que, según la Exposición de Motivos de la Ley Núm. 148 del 27 de junio de 1968, ASERCO se creó para "proteger . . . al consumidor puertorriqueño y . . . velar por sus intereses para en esa forma garantizarle ciertos derechos básicos, tales como su derecho . . . a estar protegido contra productos peligrosos y contra prácticas inescrupulosas. . . ." A la luz de estos objetivos, el inciso 8 citado, sobre el cual guarda silencio el historial legislativo, debe ciertamente interpretarse del modo más lato posible para cumplir el propósito del legislador.

Además, la adición del inciso (g) a la Ley Núm. 148, efectuado por la Ley Núm. 31 del 30 de junio de 1972, no tuvo por objeto la concesión de facultades no poseídas ya por el organismo administrativo. Sobre esto sí existe historial legislativo. En el Informe de la Comisión de Asuntos al Consumidor sobre el P. de la C. 1777 [2] se expresa con toda claridad que ". . . La adición de este nuevo inciso (g) es conveniente ya que se eliminan posibles dudas o conflictos en cuanto a la facultad de la Administración para adjudicar las querellas que recibe en relación a esos asuntos. . . ." Lo que el inciso (g) a todas luces hace es reafirmar la existencia de un poder, no crearlo.

No basta con concluir, sin embargo, que se confirió el poder de adjudicar querellas en situaciones como la presente. Aún queda la pregunta esencial de si tal concesión es constitucionalmente posible.

No existe disposición alguna de la Constitución del Estado Libre Asociado de Puerto Rico o de la de Estados Unidos que exija que únicamente los tribunales puedan entender en casos

---

[2] No está disponible todavía la cita precisa del Diario de Sesiones en que se da cuenta de este documento.

de la actual naturaleza. Desde hace más de sesenta años, el Tribunal Supremo de Estados Unidos validó la delegación a agencias administrativas del poder de imponer penalidades. *United States* v. *Grimaud*, 220 U.S. 506 (1911). Hoy en día, un distinguido estudioso de estos temas ha escrito:

"Las sanciones que los administradores pueden utilizar para llevar a efecto sus objetivos generales son en verdad amplias— tan amplias como la materia envuelta." Gellhorn, Walter, *"Administrative prescription and imposition of penalties"*, 1970 Wash. U.L.Q. 265, 271. (Traducción nuestra.)

Véanse también: *Lloyd Sabaudo Societa* v. *Elting*, 287 U.S. 329 (1932); *Old Republic Life Inc.* v. *Thacher*, 12 N.Y.2d 48, 234 N.Y.S.2d 702 (1962); McKay, *Sanctions in Motion: The Administrative Process*, 49 Iowa L. Rev. 441 (1964); Gribetz and Grad, *Housing Code Enforcement: Sanctions and Remedies*, 66 Colum. L. Rev. 1254 (1966); Jaffe, L.: *Judicial Control of Administrative Actions* 110 (1965).

Desde hace largos años se ha establecido que el Congreso puede autorizar la imposición de multas por organismos administrativos. 1 Davis, *Administrative Law Treatise*, sec. 2.13, pág. 138 (1958). La delegación de poderes de adjudicación tiene sus límites, no obstante, aunque no es ésta la ocasión para precisarlos, labor que exige el análisis de situaciones concretas. Por vía de ejemplo, puede señalarse que la crítica actual no se inclina a considerar que es posible investir a un organismo administrativo del poder de encarcelamiento. Gellhorn, *supra*, 285.

Fuera del derecho norteamericano, la situación es aun más clara. En los países de tradición civilista, los organismos administrativos han poseído normalmente por larguísimos años el poder de poner en vigor sus propias decisiones, contrario a lo efectuado en este caso por ASERCO, en que se acudió a los tribunales. Schwartz, B., *French Administrative Law and the Common-Law World*, N.Y.U. Press, 1964, págs. 103–104. Respecto al derecho puertorriqueño, este Tribunal no ha vaci-

lado en autorizar delegaciones de poder de índole análoga a la presente en casos apropiados. *U.T.I.E.R.* v. *J.R.T.*, 99 D.P.R. 512 (1970); *Rovira Palés* v. *P.R. Telephone Co.*, 96 D.P.R. 47 (1968).

Parte esencial de reformas a los sistemas de justicia en muchas jurisdicciones, debe añadirse, es el reconocimiento de que organismos no judiciales deben atender asuntos que hasta cierto tiempo se consideraron de la competencia exclusiva de los tribunales.[3] El estatuto aquí envuelto ilustra dicha tendencia, que tanto puede ayudar a la pronta decisión de las controversias.

■ Lo anterior apunta, por supuesto, no sólo a la permisibilidad de la delegación de poderes adjudicativos a instrumentalidades administrativas en Puerto Rico, ya que no vemos razón para interpretar la Constitución del Estado Libre Asociado de modo diferente a corrientes centrales de este tiempo, sino al hecho también de que fue la intención de la Asamblea Legislativa efectuar la delegación aquí concernida desde la creación de ASERCO. En ausencia de indicación fehaciente de que fue la intención legislativa no sólo detener, sino echar hacia atrás, el desarrollo del derecho administrativo en el país, no podemos fallar de modo distinto.

■ Valga aclarar, finalmente, que si bien se les puede conferir a los organismos administrativos la facultad, en determinadas circunstancias y con estricta sujeción a los dictados del debido proceso de ley, de adjudicar querellas, esto a su vez impone una obligación especial a los tribunales de ser

---

[3] Esto ha sido así desde los mismos tiempos del desarrollo del derecho administrativo. Benjamin, Robert M.: *Administrative Adjudication in the State of New York*, 1942. Para el extraordinario crecimiento de este aspecto desde el libro clásico de Benjamin, consúltese: *The Improvement of the Administration of Justice*, A.B.A. Section of Judicial Administration, 5a. ed., 1971, cap. 12; y en relación con otros métodos no judiciales de resolver controversias, véase: Widiss, "Non Judicial Dispute Resolution", en *Quest for Justice*, A Report on a National Institute of Justice, A.B.A., 1973, págs. 139–146.

especialmente cuidadosos en revisar las decisiones en este campo para proteger la ciudadanía contra posible actuaciones arbitrarias. Cuando el administrador puede no solamente dirigir sino también castigar, el rigor de la revisión judicial debe por fuerza incrementarse. Davis, K. C.: *Discretionary Justice*, Louisiana State Univ. Press, Baton Rouge, 1969, *passim;* Gellhorn, W. *ob. cit.* 285.

*Por los fundamentos expuestos se revoca la resolución del tribunal de instancia.*