# 2000 DTA 86

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ
PANEL I**

LUIS CABAN
Recurrente

v.

DEPARTAMENTO DE SALUD PROGRAMA W.I.C.
Recurrido

Núm. KLRA-98-00753

San Juan, Puerto Rico, a 8 de febrero de 2000

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

RECEIVED

AUG 3 1 2000

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

1

## TEXTO COMPLETO DE LA SENTENCIA

El Sr. Luis Cabán nos solicita la revisión de la resolución dictada el 23 de octubre de 1998 por el Departamento de Salud, Programa W.I.C., Programa de Alimentación Suplementaria Para Mujeres, Infantes y Niños (en adelante W.I.C. por sus siglas en inglés) en la cual se le descalifica por un período de tres años por incurrir en violación contractual de tipo E-4 y E-8, y se le exige el pago de dos mil quinientos ochenta y siete dólares con sesenta y ocho centavos ($2,587.68), conforme la Ley 170 de agosto de 1998, según enmendada, y el Código de Reglamentación Federal, 7 C.F.R. 246.

### II

El Sr. Luis Cabán (en adelante Cabán) suscribió con el Departamento de Salud Programa W.I.C. un contrato. Mediante dicho contrato, se obligó a redimir cheques de los participantes del programa para una serie de productos alimenticios, tales como: leche maternizada conocida como Prosobee, Enfamil sin hierro y con hierro, y mantener sobre los mismos un inventario mínimo.

Cabán, mediante el referido contrato, se comprometió a cumplir con las normas y procedimientos establecidos en el Programa W.I.C. incluyendo la reglamentación estatal, el manual del comerciante y las disposiciones del Código de Reglamentación Federal., C.F.R. sec. 246. Cabán permitiría a los representantes federales, estatales y locales del programa que visitaran su comercio para observar los procedimientos de rendición de cheques y llevar a cabo visitas de monitoría no anunciadas para determinar el cumplimiento de los reglamentos, normas, procedimientos del programa; proveer recibos, precios de góndola y registros de facturas de adquisición de productos.

La Secretaria del Departamento de Salud, Doctora Carmen Feliciano de Melecio (en adelante la Secretaria), ordenó que se realizara una auditoría a todos los comerciantes autorizados del programa W.I.C.

Como parte de la auditoría, el establecimiento de Cabán fue visitado el 14 de noviembre de 1995 por los señores Edwin Rivera, investigador, y Wilfredo Rivera, auditor del departamento.

Se tomó inventario físico de las fórmulas maternizadas Prosobee, Enfamil con hierro y Enfamil sin hierro. A éste le fueron solicitadas las facturas que evidenciaran las compras de fórmulas maternizadas de los cuatro meses anteriores a la fecha de toma de inventario, o sea el 14 de noviembre de 1995.

Los hallazgos de la auditoría llevada a cabo reflejaban una discrepancia entre los cheques cobrados al W.I. C. que incluian fórmula maternizada y la cantidad de leche maternizada disponible para ser despachada en ese período. Al analizar dichos resultados, los auditores del programa W.I.C. concluyeron que la única explicación a la existencia de dicha discrepancia era que Cabán cambió las fórmulas maternizadas por otros productos autorizados o no autorizados y/o que el comerciante cambió los cheques W.I.C. por dinero en efectivo. Tales conclusiones fueron informadas a Cabán, así como la intención de descalificarlo como comerciante autorizado y exigirle el reembolso de la sobrefacturación.

Cabán solicitó vista administrativa con antelación a la vista en su fondo; El Oficial Examinador señaló una conferencia con antelación a la vista para el 13 de agosto de 1996 a la 1:30 PM, en las oficinas del Departamento en San Juan; y se le presentó en dicha vista a los auditores del programa W.I.C., por Cabán, una serie de ocho (8) facturas adicionales para que fuesen tomadas en consideración. Luego de dicha entrevista preliminar se notificó a Cabán que aún adeudaba la suma de dinero de dos mil quinientos ochenta y siete dólares con sesenta y ocho centavos ($2,587.68).

En vista de la anterior determinación por los auditores, se señaló vista administrativa, la cual fue celebrada el día 2 de junio de 1997. Presentada la prueba por ambas partes, el Oficial Examinador llegó a las conclusiones que posteriormente fueron adoptadas por la Secretaria en la resolución de la cual aquí se recurre del 23 de octubre de 1998.

Inconforme, Cabán acude ante nos mediante solicitud de revisión y plantea varios señalamientos de error a saber:

"1. Erró el Oficial Examinador al delegar su función adjudicadora a los auditores de la evidencia que debería ser admitida y fundamentando sus conclusiones de hechos y de derecho desprovisto el récord de evidencia sustancial, pertinente y material.

2. Erró el Tribunal Administrativo en no garantizarle al Recurrente a su derecho al "Debido Proceso de Ley".

3. Erró el Organismo Administrativo al no resolver la controversia dentro del término de seis (6) meses desde su radicación que establece la Ley de Procedimiento Administrativo Uniforme, Sección 2163(g)."

Nos solicita que revoquemos la resolución dictada por la Secretaria y además el pago de la suma de diecinueve mil seiscientos ochenta y tres dólares con sesenta y ocho centavos ($19,683.68) a su favor y dejemos sin efecto la descalificación de él del programa de W.I.C.

Examinados detenidamente la totalidad del expediente, concluimos que no se cometieron los errores señalados.

### III

En primer lugar, alega Cabán que las determinaciones de hecho y conclusiones de derecho incorporadas en la resolución del Departamento no están sostenidas por la prueba presentada y evidencian parcialidad en la apreciación de la misma. Para sostener dichas alegaciones, arguye que el proceso ante el Departamento no puede ser objetivo, toda vez que la Secretaria es juez y parte en el proceso.

El planteamiento sobre parcialidad, más que basarse en hechos específicos, pretende revivir una controversia que hace muchos años fue resuelta por los tribunales: la delegación del poder de adjudicación a un organismo administrativo. Entendemos que es un asunto que ha sido discutido ampliamente en nuestra jurisdicción, así como en la jurisdicción federal, donde el concepto de organismos administrativos tuvo su génesis. No es necesario profundizar en la discusión de la facultad adjudicativa de los organismos administrativos. Basta con apuntar que el Tribunal Supremo de Puerto Rico ha resuelto que desde la creación, a principios de siglo, de las agencias administrativas, los tribunales han aceptado que para desempeñar adecuadamente las múltiples funciones asignadas en esta sociedad al Estado, era necesario otorgar poderes de adjudicación. La preocupación inicial de los tribunales con la constitucionalidad de la delegación de múltiples poderes a estas entidades fue superada en la década del cuarenta y ahora la revisión judicial mayormente se ha convertido en un instrumento para evitar actuaciones arbitrarias y velar por el cumplimiento estricto del debido proceso. *López Vives v. Policía de P.R.,* 118 D.P.R. 219 ((1987); *Hernández Denton v. Quiñones Disdier,* 102 D.P.R. 218 (1974).

El hecho de que el Departamento ordene una investigación sobre el uso y manejo de los fondos del programa W.I.C, y luego adjudique responsabilidad a un comerciante que contrató con el programa W.I.C., no le hace al Departamento una parte con interés en la controversia, ni viola ningún principio de carácter constitucional. El programa W.I.C. es una entidad separada del Departamento. Es decir, dicho programa es financiado en su totalidad, con fondos federales y cuenta con su propio Director Ejecutivo. El Departamento es, sencillamente, un facilitador del Plan W.I.C. y, a la vez, vela porque los comerciantes que han contratado con el

programa cumplan fielmente con los estatutos correspondientes.

Por último, el proceso administrativo está sujeto a la revisión judicial, mecanismo que garantiza que las agencias actúen basadas en la prueba y en el récord administrativo y que sus decisiones no sean unas arbitrarias, irrazonables o basadas en parcialidad o prejuicios. *Murphy Bernabé v. Tribunal*, 103 D.P.R. 692, 699 (1975).

Cabán no señala hechos específicos que indiquen que la actuación de la Secretaria de Salud estuvo matizada por prejuicio contra él o parcialidad en la adjudicación de la controversia, ni que ésta fuese ilegal o irrazonable. Una mera alegación de parcialidad o prejuicio es insuficiente para sostener una reclamación de violación al debido proceso de ley; ésta debe estar sustentada con prueba y no con conclusiones. *La Facultad para las Ciencias Aplicadas, Inc. v. Consejo de Educación Superior*, ___ D.P.R. ___ (1993), **93 J.T.S. 88**; *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194 (1987).

En conclusión, el procedimiento administrativo seguido no fue uno viciado de parcialidad o prejuicio, según alega Cabán. El primer error no fue cometido.

## IV

Señala Cabán en su segundo error que erró el Tribunal Administrativo en no garantizarle su derecho al *"Debido Proceso de Ley"*.

El debido proceso de ley, distinto a algunas reglas procesales, no es una concepción técnica con contenido fijo, sin relación a tiempo, lugar y circunstancia. Su implementación requiere, en toda causa, conjugar: 1) el interés privado; 2) el riesgo a un embargo ilegal; 3) su valor de salvaguarda; 4) el interés del Estado. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

A base de los criterios de *Mathews, supra,* la jurisprudencia ha elaborado varios requisitos que debe cumplir todo procedimiento adversativo para satisfacer las exigencias del debido proceso de ley, a saber: 1) notificación adecuada del proceso; 2) proceso ante juez imparcial; 3) oportunidad de ser oído; 4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; 5) tener asistencia de abogado; y 6) la decisión se base en el récord. *Rivera Rodríguez & Co. v. Stowell Taylor*, ___ D.P.R. ___, **93 J.T.S. 111** (1993).

Con respecto al requisito de *"notificación adecuada"*, no se ha definido lo que ello constituye. Si se ha cumplido o no con la norma del debido proceso de ley, es cuestión que dependería de las circunstancias particulares en cada caso. No obstante, existen ciertos indicadores básicos para medir si ello se satisface. *Perron v. Corretjer*, 113 D.P.R. 593 (1982). Uno de estos indicadores es el factor preparación: si la notificación fue hecha de manera tal que le permita al querellado preparar una defensa adecuada. Dentro de este análisis, se toma en consideración el tiempo que el querellado necesita para preparar su defensa. Hay que considerar la fecha en que se hizo la notificación de los cargos, la fecha de la vista y la urgencia del procedimiento. Estos factores, al menos en el caso de autos, no hay que tomarlos en consideración, ya que las alegaciones de Cabán son en el sentido de que la notificación es vaga y ambigua, pues el Departamento nunca especificó cuál de los señalamientos imputados habría de encausar. Así, lo que tendríamos que determinar es si la notificación informó las violaciones de ley que se imputan. *United States v. Miller*, 471 U.S. 130, 134-135 (1984); *Pueblo v. González Olivencia*, 116 D.P.R. 614, 617 (1985).

Examinada la notificación que el Departamento dirigió a Cabán el 23 de septiembre de 1996, observamos que la misma indica que el querellado ha incurrido en dos violaciones Tipo E. Estas son, según expresa la notificación:

TIPO E-4: *"Comerciante cambia fórmulas maternizadas por otros productos autorizados o no autorizados por el Programa".*

TIPO E-8: *"Comerciante cambia los cheques W.I.C. por dinero"*.

Aunque la notificación enviada a Cabán expresa las violaciones en la alternativa, ello no representa un impedimento para que él pudiese preparar una defensa adecuada. Las violaciones imputadas están, ambas, incluidas dentro de una misma clasificación: Tipo E. Entendemos que no se trata de violaciones que están clasificadas en distintas secciones del reglamento de la agencia, ni se trata de violaciones que sean tan distintas en su definición y elementos, que los elementos en una sean contrarios o excluyentes en la otra. Todo lo contrario, la notificación incluye claramente cuáles son las violaciones imputadas al querellado, por lo que Cabán tenía la oportunidad de preparar su defensa para ambas imputaciones. El segundo señalamiento de error no fue cometido.

## V

Alega el Sr. Cabán que todo el proceso adjudicativo ante el Departamento está viciado, toda vez que no cuenta con un Reglamento promulgado, conforme lo requiere la Ley de Procedimiento Administrativo Uniforme, *supra*. No tiene razón.

El programa W.I.C., a nivel federal, es administrado por el Servicio de Alimentación y Nutrición del Departamento de Agricultura de los Estados Unidos. En Puerto Rico, el programa W.I.C. es administrado por el Departamento de Salud. De esta forma, su base legal surge del *"Special Supplement Food Program for Women, Infants and Children, Child Nutrition Act"* de 1966, 42 U.S.C. 1786, según enmendada, y su correspondiente Reglamento contenido en 7 CFR 246. Mediante esta legislación, el Departamento está facultado para crear los criterios que habrán de guiar la administración del programa W.I.C. en Puerto Rico.

Uno de los requisitos de elegibilidad para recibir los fondos del programa W.I.C. es que la agencia estatal que vaya a administrar el plan deberá someter un Plan Estatal Anual *("State Plan")*. Este plan tendrá que incluir los sistemas de monitorías y los procedimientos de investigación, a realizarse en los comercios operando bajo el programa W.I.C. Como parte del Plan Estatal se ha establecido un sistema de investigación, aprobado por el *"Food and Nutrition Service"*. Es de ahí que surge la facultad y obligación del programa W.I.C. en Puerto Rico de establecer un reglamento que contenga el procedimiento a seguir. Así, el programa W.I.C. en Puerto Rico ha promulgado el Manual del Comerciante. Este reglamento tiene el propósito de informar a los comerciantes sobre los requisitos del Programa y establecer las normas y procedimientos que rigen la participación de comerciantes, una vez aceptados en el Programa. En adición, el contrato para la Autorización de Comerciantes del Programa W.I.C. de Puerto Rico, contiene, en su sexta y séptima cláusulas, los procedimientos relativos a la adjudicación de controversias que surjan entre el comerciante y el Programa. Por las razones que hemos expresado, concluimos que no se cometió el error señalado. En adición, indica Cabán que el Departamento cometió error en la apreciación de la prueba e incidió, al determinar la deficiencia y la comisión de las violaciones, a base de un inventario inicial estimado.

En cuanto al planteamiento sobre insuficiencia de prueba, reiteradamente los tribunales han resuelto que las conclusiones e interpretaciones de los organismos especializados merecen gran consideración y respeto. *Roberto Fuertes y otros v. A.R.P.E.,* ___ D.P.R. ___ (1993), **93 J.T.S. 165**; *Murphy Bernabé v. Tribunal, supra.* Por esta razón, los tribunales deben ser cautelosos al intervenir con dichas determinaciones. *La Facultad para las Ciencias Aplicadas, Inc. v. Consejo de Educación Superior, supra.*

El alcance de la revisión judicial de una decisión administrativa está limitado por la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2175, *et seq*. Esta disposición requiere que los tribunales confirmen las determinaciones de hechos de una agencia administrativa si están sostenidas por *"evidencia sustancial que obre en el expediente administrativo"*. 3 L.P.R.A. 2181. Esta disposición acoge estatutariamente la norma jurisprudencial de que, de ordinario, los tribunales no intervendrán con las determinaciones de hecho de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad.

5

*Metropolitana, S.E. v. A.R.P.E., et al.,* ___ D.P.R. ___ (1995), **95 J.T.S. 39**, a la pág. 76.

Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración".* Hilton Hotels v. Junta de Salario Mínimo, 73 D.P.R. 670, 686 (1953).

El perito, Contador Público Autorizado (C.P.A.) y asesor de auditoría del Departamento de Salud, declaró que la auditoría realizada cumplió con las normas generalmente aceptadas de contabilidad y auditoría y que los procedimientos llevados a cabo habían sido razonables. (T.P.O. 9 de abril de 1997 págs. 80, 83 y 84). Indicó que en el análisis realizado se consideraron unas salvaguardas en beneficio del comerciante y señaló algunos ejemplos al respecto. (T.P.O. 9 de abril de 1997, pág. 87).

A la luz de toda prueba desfilada, resolvemos que se presentó prueba sustancial y suficiente para sostener la deuda de Cabán y la comisión de las violaciones imputadas. Cabán no demostró que existe otra prueba sustancial que reduzca o menoscabe el peso de tal evidencia.

Tanto la prueba obrante en el récord como la desfilada en la vista administrativa fue suficiente para probar las violaciones señaladas. No hay evidencia de error manifiesto alguno en la apreciación de la prueba.

Por los fundamentos antes discutidos, se expide el auto solicitado y se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General