# 2006 DTA 116

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN Y ARECIBO**
**PANEL VII**

ÁNGEL M. SANTIAGO H/N/C: MANATÍ RACE TRACK
Recurrente

v.

JUNTA DE CALIDAD AMBIENTAL, CARLOS LÓPEZ FREYTES,
PRES., ESTADO LIBRE ASOCIADO DE PUERTO RICO
Recurridos

Núm. KLRA-2006-00217

San Juan, Puerto Rico, a 22 de septiembre de 2006

Panel integrado por su Presidente, el Juez Rivera Román,
el Juez Salas Soler y la Juez Coll Martí

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El señor Ángel M. Santiago, haciendo negocios como Manatí Race Track, recurre ante nos y solicita la revisión de dos resoluciones administrativas emitidas por la Junta de Calidad Ambiental (en adelante la Junta). La primera resolución impugnada, R-05-20-11, dictada el 7 de junio de 2005, deniega el segundo Plan de Cumplimiento para la Mitigación de Ruidos sometido por Manatí Race Track para la consideración de la agencia. La segunda resolución impugnada, R-05-21-05, dictada el 17 de junio de 2005, resuelve no acoger la recomendación del Oficial Examinador de ordenar el cierre total de las facilidades de Manatí Race Track y reitera las restricciones impuestas mediante la Resolución R-03-23-10 de 26 de octubre de 2003 en el horario de operaciones.

En esencia, el recurso de revisión plantea que las resoluciones impugnadas "*no caen dentro del marco del poder delegado de la Junta, no son claras, son excesivamente amplias y confusas, y peor aún, no contienen determinaciones de hechos que demuestren la razonabilidad de la decisión tomada*". (Recurso de revisión, pág. 11).

Por los fundamentos que exponemos a continuación, se confirman las resoluciones recurridas.

### I

El señor Ángel M. Santiago es dueño de una pista de aceleración conocida como Manatí Race Track. Personal técnico de la Junta, Oficina Regional de Arecibo, realizó varias inspecciones para medir el ruido producido por la operación de la pista. Las lecturas efectuadas reflejaron niveles de ruido por encima de los límites establecidos en el Reglamento para el Control de la Contaminación por Ruidos, Reglamento 3418 de la Junta de Calidad Ambiental (en adelante el Reglamento).

La Junta emitió una Orden Administrativa el 18 de diciembre de 2001 mediante la cual ordenó a Manatí Race Track solucionar de inmediato el problema de ruidos generados por las carreras de automóviles y atenerse en el futuro de cumplir con las leyes y reglamentos ambientales de la Junta. Inicialmente, Manatí Race Track negó las violaciones imputadas, pero, tras varios trámites procesales, aceptó los cargos y solicitó que se le permitiera implantar el Plan de Cumplimiento para la mitigación de ruidos que sometió a la consideración de la Junta.

En la Resolución R-03-23-10 de 26 de octubre de 2003, la Junta acogió las recomendaciones del Oficial Examinador a cargo del caso y concluyó que el Plan de Cumplimiento presentado por Manatí Race Track no cumplía los requisitos establecidos para ser aprobado. La Junta concedió un plazo de 30 días a Manatí Race Track para someter un nuevo plan y restringió el horario de operaciones de la pista hasta las 10:00 de la noche.

Manatí Race Track cuestionó sin éxito la legalidad de la restricción impuesta mediante moción de reconsideración. Nuevamente, en la vista celebrada el 17 de febrero de 2003, Manatí Race Track objetó la restricción en el horario e impugnó, por primera vez, las mediciones realizadas alegando errores o problemas en el equipo de medición. En ánimo de garantizar y proteger el debido proceso de ley, el Oficial Examinador señaló una nueva vista para permitir a las partes presentar prueba pertinente a las alegaciones. El Oficial Examinador ordenó, además, la realización de mediciones adicionales para presentar en evidencia el día de la vista. En la minuta se le apercibió a Manatí Race Track que debía dar fiel y estricto cumplimiento a la restricción del horario hasta tanto otra cosa dispusiera la Junta.

Así las cosas, Manatí Race Track sometió un nuevo Plan de Cumplimiento el 9 de febrero de 2004. En la Resolución R-05-20-11, la Junta acogió las determinaciones del Oficial Examinador y nuevamente rechazó el plan presentado por incumplir con los requisitos del Reglamento. Entre otras cosas, en la Resolución se expresó que el plan no provee un método de trabajo claro ni los mecanismos para asegurar su implementación inmediata. Se expresó, además, que el plan tampoco asegura que Manatí Race Track cumplirá en el futuro con los límites de ruido establecidos en el Reglamento.

La vista evidenciaria se celebró el 12 de mayo de 2005. Manatí Race Track no compareció. Tras escuchar la prueba del Interés Público, el Oficial Examinador ordenó el cierre total de las operaciones de Manatí Race Track. La Junta acogió la orden de cierre como una recomendación y mediante la Resolución R-05-21-05 rechazó ordenar el cierre total de las operaciones. No obstante, sostuvo las restricciones en el horario previamente establecidas en la Resolución R-03-32-10.

Manatí Race Track recurre ante nos mediante el recurso de revisión que nos ocupa para impugnar las resoluciones R-05-21-05 y R-05-20-11 imputándole a la Junta haber incurrido en los siguientes errores:

*"1. Erró y actuó de forma ultra vires la Junta de Calidad Ambiental al ordenar una restricción al horario de operación de la pista de aceleración mediante una Resolución carente de Determinaciones de Hechos adecuadas y con una errónea aplicación del Derecho a los Hechos.*

*2. Erró la Junta de Calidad Ambiental al no aceptar el plan de Mitigación de Ruidos sin basar su determinación en evidencia sustancial que refute la opinión del perito del Recurrente."*

## II
### 1. La Junta de Calidad Ambiental y el control de ruidos

La Junta de Calidad Ambiental tiene la facultad delegada de implantar la política pública ambiental del Estado Libre Asociado de Puerto Rico. Para ello podrá ordenar a las personas que causan o contribuyen a crear una condición dañina para el ambiente o contra los recursos naturales o que ponen en situación de peligro inminente la salud o seguridad pública a reducir o descontinuar inmediatamente sus actuaciones. 12 L.P.R.A. sec. 8002c (a) (7). Tendrá discreción, además, para expedir órdenes de hacer o de no hacer y de cese y desista como medidas preventivas para lograr su encomienda. 12 L.P.R.A. sec. 8002c (a) (8).

Con relación al recurso ante nuestra consideración, la Junta tiene el poder expreso de *"establecer normas de calidad y pureza del ambiente, según estime conveniente, y adoptar reglas y reglamentos necesarios y razonables para el control, disminución o eliminación de sonidos nocivos a la salud y el bienestar público"*. 12 L.P.R.A. sec. 8002c (b) (6). En el marco de su poder delegado, la Junta promulgó el 25 de febrero de 1987 el Reglamento para el Control de Contaminación por Ruidos.

El Reglamento permite a los representantes autorizados de la Junta tomar las medidas de sonido con el fin de verificar que las fuentes emisoras no excedan los niveles de ruidos establecidos en el mismo reglamento. Si

la medición realizada arroja niveles de ruido por encima de los límites señalados, la Junta tiene la facultad para exigir el cumplimiento inmediato o conceder un término razonable para procurar la instalación de los controles necesarios para cumplir con los requisitos del Reglamento. Sin embargo, previo a comenzar con la construcción y modificación de las facilidades propuestas en el Plan de Cumplimiento, el propietario de la fuente emisora de sonido deberá haber obtenido la aprobación de la Junta.

El Artículo VI del Reglamento establece los criterios para la aprobación del Plan de Cumplimiento:

*"Ningún Plan de Cumplimiento será aprobado a menos que el solicitante demuestre a la satisfacción de la Junta que:*

*A. El plan provee para el cumplimiento con las disposiciones de este Reglamento tan rápidamente como, a juicio de la Junta, sea posible.*

*B. El predio originador de sonido estará en cumplimiento con las reglas y reglamentos, luego que se tomen las medidas comprendidas en el Plan de Cumplimiento.*

*C. Que el Plan provee para informes periódicos a la Junta con el fin de demostrar cumplimiento continuo con los términos del Plan.*

*D. Que la fecha final de cumplimiento no exceda de 24 meses. Reglamento para el Control de la Contaminación por Ruidos, supra, sec. 6.1.2, pág. 23.*

*La Junta podrá, además, imponer cualquier condición adicional o modificar el plan de la forma que estime razonable previo a conceder la aprobación de un Plan de Cumplimiento. Reglamento para el Control de la Contaminación por Ruidos, supra, sec. 6.1.4, pág. 23."*

## 2. La revisión administrativa

La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2101 *et seq.*, fue promulgada para alentar la solución informal de controversias sin menoscabar derechos garantizados a las partes en la ley. Conforme a este objetivo, las agencias tienen la facultad cuasi judicial de emitir decisiones y adjudicar controversias que surjan por la aplicación e interpretación de las leyes bajo su tutela y los reglamentos que promulgan. 3 L.P.R.A. sec. 2102(a) y (b).

Para salvaguardar las garantías básicas del debido proceso de ley, la L.P.A.U. dispone que en todo procedimiento adjudicativo formal las partes tendrán el derecho a presentar toda la evidencia necesaria para apoyar su reclamo, refutar oralmente o por escrito la prueba presentada en su contra y que la decisión finalmente emitida por la agencia esté basada en la totalidad del expediente, entre otras cosas. 3 L.P.R.A. sec. 2151; *Magriz v. Empresas Nativas*, 143 D.P.R. 63, 70-71 (1997). Si una parte deja de comparecer a una vista después de haber sido debidamente notificada por la agencia, se podrá anotar su rebeldía y continuar con el proceso adjudicativo sin su participación. 3 L.P.R.A. sec. 2160.

La parte adversamente afectada por una orden o resolución final de una agencia u organismo administrativo puede presentar una solicitud de revisión ante el Tribunal de Apelaciones. 3 L.P.R.A. sec. 2172. Es norma sentada en nuestra jurisdicción que las decisiones que toman las agencias administrativas merecen la mayor deferencia judicial, pues poseen la pericia y experiencia de los asuntos que regularmente tienen ante su consideración. *Cruz v. Adm. de Corrección*, **2005 J.T.S. 39**, 164 D.P.R. ___ (2005); *Otero et al. v. Toyota*, **2005 J.T.S. 13**, 163 D.P.R. ___ (2005); *Rebollo Vda. de Liceaga v. Yiyi Motors*, **2004 J.T.S. 4**, 161 D.P.R. ___ (2004).

La deferencia reconocida no significa que los tribunales abdiquemos nuestra función revisora. La revisión judicial es el mecanismo reconocido para prevenir las actuaciones arbitrarias de la agencia y velar por el cumplimiento estricto del debido proceso de ley. *Assoc. Ins. Agencies, Inc. v. Com. de Seg. P.R.*, 144 D.P.R. 425, 435 (1997); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230 (1987); *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218, 223-224 (1974).

La revisión judicial de decisiones administrativas alcanza tres áreas: el remedio concedido, las determinaciones de hechos conforme al criterio de evidencia sustancial y las conclusiones de derecho. 3 L.P.R. A. sec. 2175; *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 93 (1997) citando a D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, pág. 521.

Es un principio fundamental en la práctica del Derecho Administrativo que las determinaciones que emite una agencia estén fundamentadas en evidencia sustancial según surja del expediente del caso particular. *Magriz v. Empresas Nativas, supra*, pág. 70; *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 131 (1998); *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 114 (1996). La norma enunciada comprende dos conceptos complementarios: evidencia sustancial y exclusividad del expediente. El concepto de evidencia sustancial ha sido definido como "*aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión*". *Asoc. de Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70, 75 (2000); *Misión Ind. P.R. v. J.P., supra*, pág. 131; *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). La exclusividad del expediente obliga a la agencia a adjudicar fundamentándose exclusivamente en la prueba presentada en la vista.

La jurisprudencia ha expresado que las determinaciones de hechos tienen una función esencial en el proceso de revisión judicial, pues ayudan al tribunal a descargar su función revisora sin abrogarse funciones que competen al organismo administrativo. La norma persigue evitar que los tribunales apelativos sustituyamos el criterio de la agencia por el nuestro, mientras fomenta que la agencia adopte decisiones cuidadosas y razonadas dentro de los parámetros de su autoridad y discreción. *Reyes Salcedo v. Policía de P. R., supra*, pág. 94. Para poder ejercer nuestra función revisora de forma inteligente las determinaciones de hechos deben ser certeras y estar bien definidas de manera que nos permita evaluar si los hechos, tal y como los consideró probados la agencia, ofrecen una base razonable para su decisión. 3 L.P.R.A. sec. 2175. Las determinaciones de hechos contribuyen, además, a que la parte afectada entienda las razones de la decisión administrativa. *Misión Ind. P. R. v. J. P., supra*, pág. 152.

El Tribunal Supremo ha revocado decisiones administrativas por carecer de determinaciones de hecho sólo cuando no existe base alguna en el expediente a partir de la cual efectuar una revisión inteligente. *Id.* Por lo demás, en cuanto a las determinaciones de hechos respecta, nuestra función revisora se limita a resolver si la agencia procedió de forma arbitraria, ilegal o tan ilógica que sus actuaciones constituyen un abuso de discreción. *Reyes Salcedo v. Policía de P. R., supra*, pág. 94.

La persona que objete las determinaciones de hechos de una agencia administrativa viene obligada a demostrar que existe otra prueba en el expediente que hace forzoso concluir que la determinación de la agencia fue irrazonable. Esto es, la persona que alegue la incorrección de una determinación de una agencia no podrá descansar meramente en sus alegaciones. *Asoc. Vec. H. San Jorge v. U. Med. Corp. supra*, págs. 75-76; *Misión Ind. de P. R. v. J.P., supra*, pág. 131; *Metropolitana S.E. v. A.R.P.E.*, 138 D.P.R. 200, 213 (1995).

Por otro lado, las conclusiones de derecho podrán ser revisables en todos sus aspectos por ser los tribunales apelativos conocedores del derecho. 3 L.P.R.A. sec. 2175. En esta dimensión, la norma de deferencia se activa ante las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos bajo su tutela. *Cruz v. Adm. de Corrección, supra*; *Asoc. Vec. de H. San Jorge v. U. Med. Corp., supra*, pág. 75;

*Rodríguez v. Méndez & Co.*, 147 D.P.R. 734, 744-745 (1999).

### III

El recurso de revisión presentado por Manatí Race Track impugna la Resolución R-05-21-05 mediante la cual la Junta resuelve no acoger la recomendación del Oficial Examinador de ordenar el cierre total de las operaciones de la pista de aceleración y reitera la restricción en el horario de operaciones impuesta mediante la Resolución R-03-10-23. Sostiene que la Junta no tiene facultad para imponer una restricción en el horario de operaciones.

En primer lugar, la restricción al horario responde al reiterado incumplimiento por parte de Manatí Race Track con los niveles de ruido permitidos de una actividad comercial durante el período nocturno. El expediente refleja las mediciones de niveles de ruido realizadas por el personal técnico de la Junta y las propias admisiones de Manatí Race Track. La restricción es, además, el resultado del ejercicio discrecional de la Junta de su poder delegado para imponer medidas preventivas para eliminar la contaminación por ruidos y proteger el bienestar y la salud pública. La pista de carreras de auto ubica en un área donde residen familias que tienen derecho al disfrute de su propiedad y al reposo y descanso en su hogar.

En segundo lugar debemos aclarar que la restricción en el horario de operaciones se impuso mediante la resolución R-03-10-23 de 23 de octubre de 2003. De hecho, Manatí Race Track impugnó la resolución aludida e hizo varias imputaciones de problemas en el equipo de medición. El Oficial Examinador acordó celebrar una vista evidenciaria el 12 de mayo de 2005 y dispuso que, hasta que de otra forma se expresara la Junta, la Resolución 03-10-23 permanecería en vigor.

Mediante la Resolución R-05-21-05, la Junta acoge las determinaciones de hechos expresadas en el Informe del Oficial Examinador tras celebrar la vista pautada. En la vista se presentó como prueba las mediciones realizadas por el personal técnico de la Junta y el testimonio bajo juramento del señor Juan Forteza, vecino del sector Boquillas, donde ubica la pista de aceleración. Manatí Race Track tuvo la oportunidad de presentar prueba a su favor, pero no compareció a la vista y no controvirtió la presentada en la audiencia.

En lo pertinente, el Oficial Examinador concluyó que *"la pista de carreras estuvo operando los días 9, 16, 28 y 30 de abril y 5 y 7 de mayo de 2005, hasta las 12:00 a.m. y 12:30 a.m. aproximadamente",* en contravención con lo dispuesto en la Resolución R-03-23-10, que les permitía operar el negocio hasta las 10:00 de la noche.

El alegado error no se cometió. La Junta tiene facultad para suspender o condicionar las actividades de una fuente emisora de ruidos en protección del ambiente y de la salud y bienestar público. Es en el ejercicio de este poder delegado y basado en la prueba presentada en la vista que la Junta reiteró la restricción en el horario de operaciones de la pista de aceleración. Manatí Race Track no compareció a la vista para refutar la evidencia presentada ni ha demostrado que existe otra prueba en el expediente administrativo que evidencie la incorrección de la determinación de la Junta.

El señalamiento de error imputa a la Junta actuar de forma arbitraria y caprichosa al no aceptar el plan para la mitigación de ruidos sin que exista evidencia sustancial en el expediente en apoyo de la Resolución R-05-20-11. En específico se alega que no existe evidencia suficiente para refutar las medidas propuestas por el perito de Manatí Race Track en el Plan de Cumplimiento.

En su oposición, la Junta sostiene que la determinación de no aprobar el Plan de Cumplimiento sometido por Manatí Race Track se basa en las mediciones que realizó el personal técnico de la Oficina Regional de Arecibo y la Oficina de Ruidos y Querellas. Los comentarios presentados por ambas oficinas tras evaluar el plan manifiestan serias dudas sobre la efectividad del plan de mitigación presentado y el compromiso de Manatí

Race Track para cumplir con el Reglamento.

El criterio de evidencia sustancial no impone a la agencia administrativa refutar cada alegación u opinión de las partes. Es suficiente que el expediente administrativo incluya evidencia sustancial que apoye la decisión de la agencia para que concedamos deferencia y respeto a las resoluciones emitidas. No debemos sustituir el criterio de la agencia por el nuestro. Recordemos que la Junta es la agencia con el conocimiento técnico y especializado y tiene delegada la facultad para evaluar los planes para la mitigación de ruidos y el cumplimiento con su Reglamento. El error alegado no se cometió.

## IV

Por los fundamentos expuestos, se confirman las Resoluciones R-05-20-11 y R-05-21-05 emitidas por la Junta de Calidad Ambiental.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones