Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| MARÍA NIEVES CORTÉS<br><br>Recurrida<br><br>v.<br><br>WINDMAR P.V. ENERGY, INC.; SUNNOVA ENERGY CORP.<br><br>Recurrente | KLRA202300460 | REVISIÓN JUDICIAL Procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: CAG-2023-0004718<br><br>Sobre: Compra Venta de Equipos Electrónicos de Energía Renovable-Placas Solares/Práctica Engañosa |
|---|---|---|

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de enero de 2024.

Comparece ante nos Sunnova Energy Corp. ("Sunnova" o Recurrente") mediante *Recurso de Revisión de Decisión Administrativa* presentado el 30 de agosto de 2023. Nos solicita que anule y deje sin efecto la *Orden* emitida el 17 de julio de 2023, notificada el 20 de julio del mismo año, por el Departamento de Asuntos al Consumidor ("DACo"). Por virtud de esta, el DACo declaró *No Ha Lugar* la solicitud de desestimación radicada por Sunnova.

Por los fundamentos expuestos a continuación, **confirmamos** la *Orden* recurrida.

## I.

En lo pertinente a la controversia ante nuestra consideración, el 22 de junio de 2023, el DACo notificó a Sunnova de la *Querella* presentada en su contra por la señora María Nieves Cortés ("señora Nieves Cortés" o "Recurrida") el 16 de junio de 2023. Mediante la aludida *Querella,* la Recurrida alegó que suscribió un contrato de

arrendamiento de un sistema solar por diez (10) años con la compañía de venta de placas solares Windmar Home, por la cantidad de $14,380.00. Sostuvo que Windmar Home le instaló el sistema solar y Sunnova, a quien identificó como el banco financiero, le envió un estado de cuenta cobrándole la cantidad de $37,981.52 por la compra del sistema, el cual sería financiado por un periodo de veinticinco (25) años. A su vez, el Recurrente le remitió un correo electrónico indicándole que tenía dos (2) meses de atraso.

Arguyó, además, que se comunicó con Sunnova, quien le notificó que poseía un contrato con su firma por la cantidad reclamada. Sin embargo, la señora Nieves Cortés negó que la firma contenida en el documento era suya. Investigado el asunto, a petición de la Recurrida, esta adujo que Sunnova admitió que no era su firma, pero le informó que el contrato era vinculante. Por lo cual, la Recurrida solicitó que se igualara la cantidad acordada y se mantuviera el arrendamiento del sistema solar, o que este fuera removido de su propiedad sin penalidad alguna.[1]

En respuesta, el 10 de julio de 2023, Sunnova presentó una *Moción Solicitando Referido a Arbitraje y/o Desestimación por Falta de Jurisdicción.*[2] Mediante esta, alegó que el DACo carecía de jurisdicción para atender la reclamación del querellante, por existir una cláusula de arbitraje en el contrato suscrito entre las partes. Señaló que la Recurrida reconoció que leyó el contrato y todos sus anejos y que recibió copia de este, por lo que se debía atener a los términos del acuerdo. Por tales razones, solicitó que se ordenara la paralización de los procedimientos ante el foro administrativo para que se refiriera la controversia al procedimiento de arbitraje.

---

[1] Apéndice del *Recurso de Revisión de Decisión Administrativa*, Exhibit I, págs. 1-6.
[2] *Íd.*, Exhibit II, págs. 7-123.

Evaluados los planteamientos esbozados por las partes, el 17 de julio de 2023, notificada el 20 del mismo mes y año, el DACo emitió la *Orden* recurrida en la que declaró *No Ha Lugar* la solicitud de desestimación presentada por Sunnova.[3] En esencia, determinó lo siguiente:

> Al amparo de las facultades delegadas por la Ley Núm. 5, este Departamento podrá asumir jurisdicción sobre todo lo relacionado a la compraventa, instalación y mantenimiento de servicios de placas solares, siempre que no estén de por medio asuntos en torno a la producción de energía, los métodos de facturación, las tarifas o los problemas de interconexión. [...]. En aquellos casos en que esté de por medio una cláusula de arbitraje, la misma no será automáticamente exigible. Ello es, así pues, aun pese a existir una política pública a favor del arbitraje, se ha aclarado que, bajo ciertos escenarios, la misma pudiera ser invalidada de configurarse circunstancias suficientes que así lo permitan.

En desacuerdo con la determinación, el 31 de julio de 2023, Sunnova radicó una *Moción de Reconsideración*. Mediante esta, reiteró la falta de jurisdicción de la agencia e insistió en el referido de la disputa a un procedimiento de arbitraje. Además, argumentó que dicha *Orden* no cumplió con la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 38-2017, 3 LPRA sec. 9601 *et seq.* ("LPAU"), ni con el *Reglamento de Procedimientos Adjudicativos*, Reglamento Núm. 8034 del 13 de junio de 2011 (Reglamento 8034). Sunnova solicitó que se declarase con lugar la solicitud de reconsideración y se refiriese el caso a arbitraje, tal y como habían acordado las partes.[4]

Ante el silencio de la agencia e inconforme con el dictamen emitido, el 30 de agosto de 2023, Sunnova compareció ante nos y formuló los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL EMITIR UNA DECISIÓN POR LA QUE PRETENDE DILUCIDAR UNA CONTROVERSIA PARA LA CUAL CARECE DE JURISDICCIÓN PARA CONOCER, POR HABER PACTADO LAS PARTES EL ARBITRAJE COMO MÉTODO PARA RESOLVER TODAS LAS DISPUTAS.
> SEGUNDO ERROR: ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL EMITIR UNA

---

[3] *Íd.*, Exhibit III, pág. 124.
[4] *Íd.*, Exhibit V, págs. 130-154.

DETERMINACIÓN QUE ES CONTRARIA A LA POLÍTICA PÚBLICA EXISTENTE EN PUERTO RICO A FAVOR DE LA SOLUCIÓN DE CONFLICTOS POR MEDIO DE ARBITRAJE Y QUE HA SIDO RESPALDADA Y RECONOCIDA POR EL TRIBUNAL SUPREMO DE PUERTO RICO.

Tras varios trámites procesales, el 18 de octubre de 2023, esta Curia emitió una *Resolución*, en la que le concedió un término de diez (10) días al DACo, para que fundamentara su *Orden* emitida el 17 de julio de 2023. Además, ordenó al DACo a elevar el expediente administrativo. En cumplimiento con lo ordenado, el 30 de octubre de 2023, el DACo presentó una *Moción en Cumplimiento de Orden*. Fundamentó su determinación en la Orden 2022-002 y la Interpretación Administrativa 2022-003 del DACo, que expone la consideración de las cláusulas de arbitraje en las querellas relacionadas a servicios de venta, instalación y mantenimiento de sistema de placas solares.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**II.**

**A. *Revisión Judicial de Determinaciones Administrativas***

La revisión judicial de las decisiones administrativas tiene como fin garantizar que los ciudadanos tengan un foro al cual acudir para vindicar sus derechos y para obtener un remedio frente a posibles actuaciones arbitrarias. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 435 (1997); *Hernández Denton v. Quiñones Desdier,* 102 DPR 218, 223-224 (1974). Este proceso "forma parte de un trámite apelativo cuyo diseño responde al principio constitucional de mayor acceso a los tribunales". *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 302 (2016).

La Ley Núm. 38 de 30 de junio de 2017, según enmendada, mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* ("LPAU"), 3 LPRA sec. 9601 *et*

*seq.,* dispone el alcance de la revisión judicial de las determinaciones de las agencias. Véase Sec. 4.5 de la LPAU*, supra.* Tanto la referida Ley como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC v. Caguas Centrum,* 148 DPR 70, 80 (1999).

Ahora bien, "es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos debemos conceder deferencia a las decisiones de las agencias administrativas". *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016). Esto se debe "a la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado". *Íd.* (Escolio omitido). Es sabido que las determinaciones de una agencia administrativa gozan de una presunción de corrección. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019).

A tenor con lo anterior, los tribunales deben deferencia a las agencias administrativas salvo que: (1) las determinaciones no estén basadas en evidencia sustancial; (2) las conclusiones de derecho fueran incorrectas; (3) la agencia actuara de forma arbitraria, irrazonable o ilegal; o (4) que lesionara derechos fundamentales. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021)*; Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otro, supra; ECP Incorporated v. OCS,* 205 DPR 268, 281-282 (2020).

> Es decir, como excepción los tribunales pueden intervenir con las determinaciones de hechos de una agencia *cuando no están sustentadas por el expediente,* ya que el foro judicial no debe sustituir su criterio por el del foro administrativo si hizo una interpretación razonable de los hechos. *OCS v. Point*

*Guard Ins.*, 205 DPR 1005, 1027 (2020). (Citas y comillas omitidas). (Énfasis suplido).

"Por su parte, las determinaciones de derecho pueden ser revisadas en su totalidad". *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020).

### B. Orden 2022-002 e Interpretación Administrativa 2022-003 del DACo

Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341 *et seq.,* ("Ley Núm. 5"), faculta al Departamento de Asuntos del Consumidor ("DACo") a "vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de use y consumo". 3 LPRA sec. 341b. Para cumplir con dicho deber ministerial, el Artículo 6 de la precitada Ley faculta al DACo para, entre otros:

(a) Reglamentar, fijar, controlar, congelar y revisar los precios, márgenes de ganancias y las tasas de rendimiento sobre capitales invertidos a todos los niveles de mercadeo, sobre los artículos, productos y aquellos servicios que corriente y tradicionalmente se prestan y se cobran por horas o por unidad, se ofrezcan o se vendan en Puerto Rico, en aquellos casos que tales medidas se justifiquen para proteger al consumidor de alzas injustificadas en los precios, evitar el deterioro del poder adquisitivo del consumidor, y proteger la economía de presiones inflacionarias. [...].

[...].

(c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. [...].

(d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho. [...].

[...].

(i) Interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de esta ley y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento. [...].

(j) **Reglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio**, incluyendo la facultad de fiscalizar los reclamos sobre la calidad y demás cualidades de los productos y servicios, realizados a través de los distintos medios de comunicación, así como requerir de los

anunciantes evidencia de la veracidad de los reclamos realizados.

[...].

(l) Promover y establecer normas de calidad, seguridad e idoneidad en los servicios y en los productos de uso y consumo y requerir su cumplimiento. El Secretario podrá requerirle, dentro de un tiempo razonable, a toda empresa que venda algún producto u ofrezca algún servicio en Puerto Rico y que sea objeto de una querella, investigación rutinaria o información que impugne la idoneidad del producto o servicio, que lleve a cabo pruebas de calidad, seguridad e idoneidad, realizadas según se disponga específicamente en cada caso y costeadas por la propia empresa. [...].

[...].

(s) **En coordinación con las demás agencias y departamentos del Estado Libre Asociado de Puerto Rico, promover y velar por el cumplimiento de todas las leyes, reglas, reglamentos y órdenes que afecten los intereses del consumidor.**

[...].

(z) Establecer un sistema de licencias y de fianzas para la venta y alquiler de bienes, productos y servicios que se ofrezcan en Puerto Rico, cuando ello sea necesario y propio para poner en efecto los propósitos de esta ley. [...]. (Énfasis nuestro). 3 LPRA sec. 341e.

Asimismo, el Artículo 8 (a) de la Ley Núm. 5, *supra*, dispone que "[e]l Secretario tendrá poder para aprobar, enmendar o revocar aquellas reglas, reglamentos, órdenes, resoluciones y determinaciones necesarias al cumplimiento de esta ley". 3 LPRA sec. 341g.

Al amparo de las facultades conferidas, el 9 de febrero de 2022, el Secretario del DACo emitió la *Interpretación 2022-03 para Aclarar Aspectos Jurisdiccionales del Foro Adjudicativo del DACO Respecto a los Comercios que Ofrecen Servicios de Venta, Instalación y/o Mantenimiento de Sistemas de Placas Solares* ("Interpretación 2022-03"). El propósito de la Interpretación 2022-03 es aclarar que tanto el Negociado de Energía de Puerto Rico ("Negociado"), como el DACo ostentan jurisdicción sobre las posibles controversias relacionadas a los sistemas de placas solares. Por ello, la aludida Interpretación sirve a los fines de "delimitar el marco de acción de cada agencia, así como los efectos que pudiera tener sobre dicha jurisdicción la existencia de una cláusula de arbitraje".

En lo pertinente a la controversia de autos, de conformidad con la Interpretación 2022-03, *supra,* el DACo ostenta jurisdicción para atender querellas relacionadas a servicios de paneles o placas solares, siempre que tales reclamaciones no contengan alegaciones que giren en torno a aspectos de jurisdicción primaria del Negociado.[5] Sobre ello, expone el documento, que el Tribunal de Apelaciones ha avalado la jurisdicción del DACo en los siguientes escenarios: 1) controversias relacionadas a los servicios en garantía; 2) alegaciones por incumplimiento contractual, por productos defectuosos, ya sean placas solares o las baterías; y 3) cualquier controversia relacionada a la adquisición de un producto (las placas o las baterías), la instalación y los servicios prestados en relación a los mismos. A su vez, el DACo ostenta jurisdicción sobre todos los asuntos relacionados a prácticas engañosas y cuando surjan alegaciones de daños a la propiedad, como resultado de la instalación defectuosa de un sistema de placas solares.

No obstante, la Interpretación 2022-003, *supra,* expone que la existencia de una cláusula de arbitraje pudiera suspender el ejercicio de las facultades del DACo en las querellas relacionadas a servicios de venta, instalación y mantenimiento de sistema de placas solares. Cuando existe un acuerdo de arbitraje entre las partes en controversia, se puede evaluar lo siguiente: 1) si el acuerdo fue válidamente otorgado; 2) si la cláusula de arbitraje cubre la disputa en cuestión y es legalmente ejecutable; y 3) si dicha cláusula no está

---

[5] De conformidad con la Interpretación 2022-003, *supra,* el Negociado tiene jurisdicción primaria exclusiva sobre los casos y controversias relacionadas con:
- La política pública energética del Gobierno de Puerto Rico;
- Las tarifas y cargos que establezca la Autoridad y cualquier productor independiente de energía;
- Trasbordo de energía eléctrica o interconexión entre la Autoridad o sus subsidiarias, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica o con un interés en esos servicios; y
- Los contratos entre la Autoridad y los productores independientes de energía, así como entre productores independientes de energía, incluidos los casos en que se cuestione la razonabilidad de las tarifas de interconexión, o la razonabilidad de los términos y condiciones de un contrato de compra de energía.

sujeta a revocación según las razones que existan en ley o equidad para la resolución de cualquier contrato. Interpretación 2022-03, *supra,* citando a *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F. 3d, a la página 376.

A tenor, se deben considerar los principios generales del derecho que rigen el perfeccionamiento de los contratos para decidir si las partes acordaron arbitrar un asunto particular. *Íd.* El Tribunal Supremo de Puerto Rico aclaró que las siguientes circunstancias hacen inaplicable una cláusula de arbitraje:

1. Que el foro seleccionado resulta ser irrazonable e injusto.
2. Que de ventilarse el caso en dicho foro se incurriría en una clara y patente inequidad, o sería irrazonable o injusto.
3. **Que la cláusula no es válida porque fue negociada mediando fraude o engaño.**
4. Que la implantación de la cláusula derrotaría la política pública del Estado. Véase *Bobé v. USB Fin. Services*, 198 DPR 6 (2017). Véase, además, *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). (Énfasis suplido).

Mediante la Interpretación 2022-003, *supra*, se aclaró que, si la cláusula de arbitraje se da como parte de un contrato de adhesión, **los efectos de su aplicación deben ser ponderados en detalle, y toda duda deberá interpretarse a favor de la parte débil en la contratación. En casos donde se alega la falta del perfeccionamiento de un contrato o la existencia de algún vicio en el consentimiento, sería innecesario entrar a discutir la validez o no de una cláusula en particular y la jurisdicción del DACo sería incuestionable. Interpretación 2022-003,** *supra.*

En síntesis, **el DACo ostentará jurisdicción sobre todo caso relacionado a la compraventa, instalación y mantenimiento de servicios de placas solares,** "siempre que no estén de por medio asuntos en torno a la producción de energía, los métodos de facturación, las tarifas o los problemas de interconexión". En aquellos casos en que exista una cláusula de arbitraje, la misma no será exigible automáticamente. "[A]ntes de ceder o paralizar la

jurisdicción del foro adjudicativo del [DACo], [habrá que] analizar si la cláusula en cuestión es válida, o si se configuran los criterios que la jurisprudencia dispone para decretar su nulidad". En cualquier caso que se argumente la nulidad del contrato, se hará innecesario discutir la validez o no de una cláusula en particular.

De otro lado, el 9 de febrero de 2023 el DACo emitió la *Orden 2022-002 para Detallar los Principales Pasos a Seguir Cuando se Radique una Querella Relacionada a Servicios de Venta, Instalación y Mantenimiento de Sistemas de Placas Solares* ("Orden 2022-002"). Dicha orden fue emitida con el propósito de facilitar el trámite al interior del DACo. Según la referida Orden 2022-002, *supra*, la existencia de una cláusula de arbitraje no podrá dar base a la desestimación automática. Cónsono con lo anterior, en casos donde exista una cláusula de arbitraje, procederá hacer el análisis correspondiente, según establecido en la Interpretación 2022-003, *supra*.

### III.

La controversia principal ante esta Curia gira en torno a si el DACo ostenta jurisdicción para atender la controversia de autos, en la que las partes suscribieron un contrato que contiene una cláusula de arbitraje. Contestamos en la afirmativa.

En el presente recurso, Sunnova arguye que el DACo carece de jurisdicción para atender la reclamación instada por la señora Nieves Cortés sobre el contrato de servicio de energía solar suscrito entre las partes. Señala Sunnova que el aludido contrato contiene una cláusula de arbitraje que impide que cualquier reclamación se ventile ante el foro administrativo. Sostiene, además, que la cláusula de arbitraje contenida en el contrato es clara, por lo que las partes están obligadas a su fiel cumplimiento. Por último, argumenta que, en virtud del acuerdo entre las partes, el DACo no tiene jurisdicción, por tanto, la *Orden* recurrida es nula en derecho y *ultra vires*.

Por su parte, el DACo afirma que la Orden 2022-002, *supra*, y la Interpretación Administrativa 2022-003, *supra*, faculta a la agencia a entrar a considerar las cláusulas de arbitraje en las querellas relacionadas a servicios de venta, instalación y mantenimiento de sistema de placas solares. Sostiene, además, que luego de examinadas las alegaciones vertidas por la señora Nieves Cortés y las alegadas incongruencias que se desprenden de los contratos suscritos entre las partes, es nuestra contención que es necesaria la celebración de una vista administrativa que les permita estar en mejor posición para tomar una determinación sobre el remedio que ha de otorgarse. Veamos.

Según obra en el expediente de autos, la señora Nieves Cortes instó una querella ante el DACo en la que alegó lo siguiente:

1. Que suscribió un contrato con la compañía de venta de placas solares Windmar Home para el alquiler de un sistema solar por un término de 10 años, por la cantidad de $14,380.00.

2. Que Sunnova le remitió un estado de cuenta cobrándole la compra de un sistema solar por la cantidad de $37,981.52, a ser financiado por un término de 25 años.

3. Que se comunicó con Sunnova y este le informó que tenía en su poder un contrato firmado por esta.

4. Que solicitó copia del contrato y notó que la firma contenida en el documento no era suya, por lo que Sunnova inició una investigación.

5. Que cada vez que se comunica con Windmar Home para que la ayuden a resolver el problema le dicen que el gerente se va a comunicar y aún no había recibido llamada alguna de la compañía.

De un examen a la querella instada por la señora Nieves Cortés, notamos que esta alega que firmó un contrato con Windmar Home para el alquiler de un sistema solar. Sin embargo, arguye que Sunnova, a quien identificó como el banco financiero, ostenta otro contrato firmado con términos diferentes a los que la señora Nieves Cortés alega pactó con la compañía solar. Cabe destacar que la señora Nieves Cortés niega haber firmado este segundo contrato con el Recurrente.

Lo anterior pone de manifiesto que la querella incoada por la señora Nieves Cortés contiene alegaciones que pudieran dar lugar a una práctica engañosa por parte de una compañía solar o que la cláusula no es válida porque fue negociada mediante fraude o engaño. Véase Interpretación 2022-003, *supra.* Ante tales alegaciones sobre una venta engañosa y la existencia de dos contratos con términos y condiciones incongruentes entre sí, el DACO ostenta jurisdicción para que se ventile en los méritos esta reclamación. Al amparo de la Ley Núm. 5, *supra,* el DACo está facultado para fiscalizar los anuncios y las prácticas engañosas en el comercio. Véase Art. 6 (j) de la Ley Núm. 5, *supra.* Aun cuando el contrato firmado por la señora Nieves Cortes contiene una cláusula de arbitraje, tanto la Interpretación 2022-003, *supra,* como la Orden 2022-003, *supra,* establecen que **en casos donde se alega la falta del perfeccionamiento de un contrato o la existencia de algún vicio en el consentimiento, sería innecesario entrar a discutir la validez o no de una cláusula en particular y la jurisdicción del DACo sería incuestionable.**

Siendo este el escenario planteado por la señora Nieves Cortes, coincidimos con el DACo que procede la celebración de una vista administrativa que permita a dicha agencia a estar en mejor posición para dilucidar cual sería el remedio que ha de otorgarse a las partes. Lo anterior no es óbice para que posterior a la celebración de la aludida vista el DACo pueda referir a las partes al proceso de arbitraje. Sin embargo, entendemos **en esta etapa de los procedimientos,** procede que el DACo celebre una vista administrativa para que las partes puedan exponer sus respectivas alegaciones y dilucidar si existió o no una práctica engañosa en el otorgamiento del contrato. Conforme a lo antes reseñado, y al amparo de las facultades conferidas por la Ley Núm. 5, *supra,* nos

es forzoso concluir que el DACo, en estos momentos, tiene jurisdicción sobre el asunto.

Por tanto, según lo antes esbozado, no se desprende que el DACo haya abusado de su discreción o haya actuado de manera arbitraria, irrazonable o ilegalmente al declararse con jurisdicción. Establecido lo anterior, no encontramos razón para apartarnos de la norma de deferencia que los tribunales deben conferirle a las determinaciones finales de los foros administrativos. Por lo cual, resolvemos que el DACo actuó correctamente al retener jurisdicción de la querella presentada.

## IV.

Por los fundamentos expuestos, **confirmamos** la *Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones