Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| COBRA ACQUISITIONS, LLC<br><br>Recurrido<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrente | KLRA202400690 | REVISIÓN JUDICIAL Procedente de la Comisión Industrial de Puerto Rico<br><br>Caso Núm.:<br>CI: 23-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-01<br>CFSE: 18-20-01647<br><br>Sobre: Status Patronal |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2025.

Comparece la Corporación del Fondo de Seguro del Estado ("CFSE" o "la Recurrente") y solicita la revocación de la *Resolución* emitida el 31 de julio de 2024, por la Comisión Industrial de Puerto Rico ("la Comisión" o "la agencia recurrida"), notificada el 2 de agosto del mismo año. Mediante la referida *Resolución,* la agencia recurrida concluyó que conforme a la Orden Ejecutiva 2017-053 ("OE 2017-053") aprobada tras la emergencia por el paso del Huracán María, según enmendada por la Orden Ejecutiva 2017-072 ("OE 2017-072"), la CFSE estaba impedida de recobrar el pago de seguro obrero por el primer contrato suscrito entre Cobra Acquisitions, LLC ("COBRA" o "la Recurrida") y la Autoridad de Energía Eléctrica ("AEE"), entre octubre de 2017 y mayo de 2018, **incluyendo sus enmiendas**. Razonó la Comisión que el referido "primer contrato", así como todas las enmiendas posteriores estaban cobijadas por la Orden Ejecutiva 2017-053 ("OE 2017-053") que eximió a los contratistas, a agencias, instrumentalidades o corporaciones públicas y a entidades adscritas a la Rama Ejecutiva, de cumplir

Número Identificador

SEN(RES)2025_____

con cualquier requisito impuesto por ley, reglamento u orden administrativa para regular el proceso de contratación gubernamental durante el término comprendido en la aludida OE 2017-053. De igual forma, la Comisión concluyó, además, que durante el periodo comprendido entre octubre de 2017 a mayo de 2018 era legal que COBRA utilizara la póliza de seguro de su estado en la contratación con la AEE, por lo que la CFSE no podía cobrar por estimado de nómina del primer contrato suscrito por COBRA y la AEE ni por sus enmiendas, así como tampoco por ningún subcontratista.

Por los fundamentos que expondremos a continuación, **modificamos** la *Resolución* recurrida.

**I.**

Procedemos a exponer el trasfondo fáctico y procesal que precedió a la presentación del recurso de epígrafe.

El 17 de septiembre de 2017, el entonces Gobernador de Puerto Rico, Hon. Ricardo Roselló Nevares, firmó la Orden Ejecutiva Núm. 2017-047, ("OE-2017-047") al amparo de la entonces vigente Ley Núm. 211-1999[1], Ley de la Agencia Estatal para el Manejo de Emergencias y Administración de Desastres de Puerto Rico (derogada)y declaró un estado de emergencia ante el paso del Huracán María por Puerto Rico el 19 y 20 de septiembre de 2017.

El 28 de septiembre de 2017, a raíz del paso del Huracán María, se emitió la Orden Ejecutiva: **OE**-**2017**-**053**, intitulada ORDEN EJECUTIVA DEL GOBERNADOR DE PUERTO RICO, HON. RICARDO A. ROSELLÓ NEVARES, PARA VIABILIZAR Y ACELERAR

---

[1] El 10 de abril de 2017 se aprobó la *Ley del Departamento de Seguridad Pública de Puerto Rico*, Ley Núm. 20-2017, según enmendada, 25 LPRA sec. 172 *et seq.*, la cual derogó la *Ley de la Agencia Estatal para el Manejo de Emergencias y Administración de Desastres de Puerto Rico*, Ley Núm. 211-1999. No obstante, la Ley 20-2017, en su Artículo 8.07 dispone lo siguiente: "[e]sta Ley comenzará a regir ciento ochenta (180) días después de su aprobación". Por lo cual, al momento de la firma de la OE-2017-047, la Ley Núm. 211-1999 aún estaba vigente.

LA RECUPERACIÓN DE PUERTO RICO LUEGO DEL PASO DEL HURACÁN MARÍA, que dispuso expresamente lo siguiente:

> **Sección 1era: A tenor con el Artículo 15 de la Ley Núm. 211-1999, se exime a los contratistas y a cualquier agencia, instrumentalidad, corporación pública y/o entidad adscrita a la Rama Ejecutiva del Gobierno de Puerto Rico a cumplir con cualquier requisito impuesto por ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental.**
>
> Sección 2da: No obstante lo anterior, se dispone que **los términos y condiciones de la obligación deberán constar por escrito**, **con especificación de la fecha de otorgamiento**, objeto de la obligación, **monto total** y la firma de las personas autorizadas para suscribirla.
>
> Sección 3ra: Las agencias concernidas tendrán **90 días después de que concluya la emergencia** y se normalicen las operaciones **para requerir**, obtener y/o suplementar los documentos **y/o cumplir con cualquier requisito establecido por ley**, reglamento, orden administrativa o directriz aplicables para que se pueda continuar con los servicios otorgados en virtud de esta Orden Ejecutiva.
>
> Sección 4ta: En aquellos casos en que las agencias concernidas otorguen algún contrato, éstas tendrán 30 días después de que concluya la emergencia y se normalicen las operaciones del Gobierno para registrar los mismos ante la Oficina del Contralor.
>
> **Sección 5ta.: Cualquier obligación suscrita en o luego de la vigencia de la Orden Ejecutiva Núm. 2017-047, Boletín Administrativo Núm. OE-2017-047, y hasta que concluya la emergencia y se normalicen las operaciones del Gobierno se considerará exenta del cumplimiento de cualquier requisito dispuesto en ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental.[2]**

Así las cosas, COBRA fue contratada por la AEE para la reconstrucción, reparación y restauración del sistema eléctrico. El **19 de octubre de 2017**, COBRA suscribió con la AEE el **primer contrato** ("**2018**-**P00028**"), con vigencia a partir del **20 de octubre de 2017**.[3] Conforme al Artículo 3 del contrato 2018-P00028, las partes acordaron que la suma total por dicho contrato no excedería de $200,000.00 y el **Artículo 4.3 de dicho primer contrato estableció que este sería efectivo por un término de doce meses a partir de su firma**.[4] En lo pertinente al seguro obrero patronal, **el Artículo 12A del primer contrato dispuso que en caso de**

---

[2] *Véase*, Apéndice del *Recurso de Revisión*, págs. 518-522.
[3] *Íd.*, págs. 283-233.
[4] *Íd.*

**emergencia**, **en trabajos temporeros se podía proveer una póliza del estado del patrono**.[5]

El contrato 2018-P00028 otorgado por COBRA y la AEE el 19 de octubre de 2017, tras la firma de la OE-2017-047 y la OE-2017-053, **fue enmendado por las partes** el **1 de noviembre de 2017** (2018-P00028A).[6] Además, el **8 de diciembre de 2017**, COBRA y la AEE **suscribieron otra enmienda** ("2018-P00028B") al contrato 2018-P00028.[7]

El **1 de diciembre de 2017**, COBRA formalizó la póliza de seguro obrero con la CFSE, **Póliza Nueva Eventual Núm**. **18**-**2**-**20**-**01647,** con fecha de efectividad del 1 de diciembre de 2017 al 30 de junio de 2018, con la que remitió un pago por $2,856,000.00.[8]

El **8 de diciembre de 2017**, se emitió el Boletín Administrativo Núm. OE-2017-072 mediante el cual se aprobó la **Orden Ejecutiva Núm**. **OE 2027**-**072**, intitulada, ORDEN EJECUTIVA DEL GOBERNADOR DE PUERTO RICO, HON. RICARDO A. ROSELLÓ NEVARES, PARA ENMENDAR O DEJAR SIN EFECTO CIERTAS SECCIONES DEL BOLETÍN ADMINISTRATIVO NÚM. OE-2017-053.[9] Mediante la OE-2017-072 se dejó **sin efecto la Sección 1ra**, la Sección 2da, la Sección11ma, 12ma y 13ra de la **OE**-**2017**-**053**, y **se enmendó** la Sección 3ra, 4ta y **5ta** de la aludida OE-2017-053.[10]

---

[5] *Véase* Artículo 12 A. del Contrato Núm. 2018-P00028, Apéndice del *Recurso de Revisión,* pág. 290, que dispuso expresamente lo siguiente:
ARTICLE 12: Insurance
    A. Workers Compensation Insurance
    *The Contractor shall provide Workers Compensations Insurance as required by the Workmen's Compensation Act of the Commonwealth of Puerto Rico, **or in case of emergency short time work a policy from's de contractor's state of operation shall be accepted. The Contractor shall be responsible for compliance with said Workmen's Compensation Act by all his subcontractors, agents and invitees.***

[6] *Véase*, Apéndice del *Recurso de Revisión*, págs. 499-500.
[7] *Íd.*, págs.501-502.
[8] *Íd.*, págs. 1-5.
[9] *Íd.*, págs. 523-526.
[10] La Sección 1ra. de la OE-2027-053 disponía expresamente lo siguiente;

    **Sección 1era: A tenor con el Artículo 15 de la Ley Núm. 211-1999, se exime a los contratistas y a cualquier agencia,**

Asimismo, la OE-2017-072, al enmendar las secciones 3ra, 4ta y 5ta de la OE-2017-072 dispuso expresamente lo siguiente:

SECCIÓN 2da.: Se enmienda la "SECCIÓN 3ra"de la **Orden Ejecutiva 2017-053**, Boletín Administrativo OE-2017-053, para que lea como sigue:

*SECCIÓN 3ra. Las agencias tendrán 90 días, a partir del 8 de diciembre de 2017, para requerir, obtener y/o suplementar los documentos y/o cumplir con cualquier requisito establecido por ley, reglamento, orden administrativa o directriz aplicable para que se pueda continuar con los servicios otorgados en virtud de esta Orden Ejecutiva.*

SECCIÓN 3ra.: Se enmienda la "SECCIÓN 4ta" de la Orden Ejecutiva 2017-053, Boletín Administrativo OE-2017-053, para que lea como sigue:

*SECCIÓN 4ta. En aquellos casos en que las agencias concernidas otorguen algún contrato cubierto por esta Orden Ejecutiva 2017-053, estas tendrán 30 días, a partir del 8 de diciembre de 2017, para registrar los mismos ante la Oficina del Contralor de Puerto Rico.*

SECCIÓN 4ta.: **Se enmienda la "SECCIÓN 5ta" de la Orden Ejecutiva 2017-053, Boletín Administrativo OE-2017-053, para que lea como sigue:**

***SECCIÓN 5ta. Cualquier obligación suscrita en o luego de la vigencia de la Orden Ejecutiva Núm. 2017-047, Boletín Administrativo Núm. OE-2017-047, hasta el 8 de diciembre de 2017, incluido, se considerará exenta del cumplimiento de cualquier requisito dispuesto en ley, reglamento, orden administrativa o directriz aplicable que regule el proceso de contratación gubernamental, según los términos y condiciones provistos en la Orden Ejecutiva Núm. 2017-047.***

De lo anterior se desprende que conforme a la enmienda a la Sección 5ta. de la OE-2017-053, dispuesta en la OE-2017-072, la **exención conferida** por **la OE-2017-053**, **dejó de estar disponible para toda obligación contraída luego del 8 de diciembre de 2017**.

Es decir, que, **a partir del 9 de diciembre de 2017**, **la OE-2017-072 eliminó la exención a la exigencia de cumplir con cualquier requisito de ley concedida anteriormente** en **la Sección 1ra de la OE-2017-053** a todo contratista y/o agencia o

---

**instrumentalidad, corporación pública y/o entidad adscrita a la Rama Ejecutiva del Gobierno de Puerto Rico a cumplir con cualquier requisito impuesto por ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental.**

corporación pública en el proceso de contratación gubernamental durante la emergencia.

Así las cosas, el **21 de diciembre de 2017**, luego de entrar en vigor la OE-2017-072, COBRA y la AEE suscribieron una tercera enmienda ("2018-P00028C") al contrato 2018-P00028.[11] Posteriormente, el **28 de enero de 2018**, COBRA y la AEE suscribieron una **cuarta enmienda** ("2018-P00028D") y el **27 de febrero** de **2018**, los contratantes suscribieron una **quinta enmienda** ("2018-P00028E") al contrato 2018-P00028.[12]

Finalmente, el 26 de mayo de 2018, COBRA y la AEE otorgaron un **segundo contrato**, identificado como **2018-P00170.**[13] En lo pertinente a la **póliza de seguro obrero dicho segundo contrato en su Artículo 12 A** dispuso lo siguiente:

**Artículo 12**

**A. Commonwealth of Puerto Rico Workers Compensation Insurance**

**The contractor shall provide workmen's compensation insurance as required by Act No. 45 of April 18, 1935, as amended, known as the Workmen's Compensation Act of the Commonwealth of Puerto Rico ("Act 45"). Contractor shall also be responsible for compliance with Act 45 by all its subcontractors, agents and invites, if any, or shall certify that such subcontractors, agents and invitees have obtained said policies on their own behalf. Contractor shall furnish to PREPA a certificate from Puerto Rico's State Insurance Fund showing that all personnel employed in the work are covered by the workmen's insurance, in accordance with this Contract.**[14]

El 29 de junio de 2018, COBRA formalizó un endoso que extendió la duración de la Póliza Eventual Número 18220-01647, con la CFSE, del 29 de junio al 31 de diciembre de 2018, con la que sometió un pago por la suma de $3,544,000.00.[15] Posteriormente, el 29 de agosto de 2018, COBRA hizo una ampliación a la referida

---

[11] *Véase*, Apéndice del *Recurso de Revisión*, págs. 503-504.
[12] *Íd.*, págs. 342-348 y 334-341.
[13] *Íd.*, págs. 349-397.
[14] *Íd.*, pág. 357.
[15] *Íd.*, págs. 6-10.

póliza 18220-01647 cuya fecha de expiración fue el 30 de junio de 2019, para la que se le requirió un pago de $18,000,000.00.[16]

En el ejercicio de las facultades conferidas por la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, Ley Núm. 45 de 18 de abril de 1954, 1 LPRA sec.1 *et. seq.*, la CFSE realizó una intervención y auditó los trabajos realizados por COBRA. Tras los hallazgos en la auditoría, el 1 de febrero de 2022, la CFSE envió a COBRA Notificación de Cobro de Primas con respecto a la Póliza 1822001647.[17] Mediante comunicación escrita, fechada 7 de marzo de 2022, COBRA presentó objeciones ante la CFSE y solicitó la celebración de una vista administrativa.[18] Tras la celebración de la vista administrativa el 19 de mayo de 2022, el 24 de junio de 2022, COBRA sometió ciertos documentos solicitados que le habían sido solicitados el 27 de mayo de 2022.[19]

El 27 de febrero de 2023, la División de Seguros de Intervenciones de la Oficina Regional de la CFSE, emitió determinación final, notificada el 28 de febrero de 2023, en la que concluyó que COBRA venía obligada a pagar a la CFSE la suma de $19,567, 696. 91 por concepto de sumas de primas de seguro obrero, no pagadas, para los años 2017-2018.[20]

En desacuerdo, el 30 de marzo de 2023, COBRA presentó *Apelación* ante la Comisión, en la que solicitó la revocación de la imposición de primas de seguro de obrero no pagadas para los años 2017-2018 por parte de la CFSE por la suma de $19,567,696.91 y además, solicitó a la Comisión que ordenara a la Recurrente la devolución de la suma de $14,467,968.23 por concepto de primas pagadas sin obligación a ello.[21]

---

[16] *Íd.*, pág.11.
[17] *Íd.*, pág.12.
[18] *Íd.*, págs.19-27.
[19] *Íd.*, págs.28-61.
[20] *Íd.*, págs. 62-69.
[21] *Íd.*, págs.70-245.

Tras varios incidentes procesales, la Comisión celebró vista el 11 de abril de 2023. Posteriormente, el 17 de abril de ese año, la Comisión notificó Resolución Interlocutoria en la que ordenó a las partes a someter Memorando de Derecho en el que debían abundar en torno a las Órdenes Ejecutivas firmadas durante la Emergencia surgida tras el paso del Huracán María.[22] Las partes presentaron sus respectivos Memorandos de Derecho.[23] COBRA por su parte, reiteró su postura sobre el alcance de la flexibilización en el trámite para el otorgamiento de contratos durante la emergencia provocada tras el paso Huracán María y la exención al cumplimiento con ciertos requisitos reglamentarios, conferida por la OE-2017-053. En lo pertinente, la CFSE enfatizó en su *Memorando de Derecho* que si bien la disposiciones reglamentarias se flexibilizaron mediante la OE-2017-053, para acelerar el proceso de recuperación tras paso del Huracán María, la preocupación en torno a cuando se entendería que concluyó la emergencia, para determinar cuándo COBRA estaba obligado a cumplir con la Ley Núm. 45, *supra* y los reglamentos promulgados a su amparo, fue atendida por la OE-2017-072 al enmendar la OE-2017-053 y fijar como fecha cierta el 8 de diciembre de 201, excluyendo expresamente de la exención toda obligación suscrita luego de esa fecha.

Mediante *Resolución* emitida el 31 de julio de 2024, notificada el 2 de agosto de ese año, la Comisión concluyó que, en el Estado de Emergencia creado y avalado por la Ley de Emergencia, por la OE 2017-053 y leyes vigentes al momento del primer contrato suscrito entre COBRA y la AEE, era legal que COBRA utilizara la póliza de seguro obrero de su estado, por lo que la CFSE estaba impedida de recobrar pólizas durante dicho periodo. En dicha Resolución, la Comisión formuló las siguientes determinaciones de hechos.

---

[22] *Íd.*, págs.460-464.
[23] *Íd.*, págs.472-498.

DETERMINACIONES DE HECHOS

1. El 20 de septiembre de 2017, Puerto Rico fue malamente afectado por el huracán María, el sistema eléctrico fue destruido en su infraestructura en más de un 80%.

2. A raíz de este fenómeno, el Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares emitió el Boletín Administrativo Número: OE-2017-053, el 28 de septiembre de 2017.

3. El Boletín Administrativo Número: OE-2017-072, de 8 de diciembre de 2017 estableció que esos 90 días después de que concluya la emergencia comenzaban a contar a partir de dicho memorando.

"SECCIÓN 1ra. A tenor con el Artículo 15 de la Ley Núm. 211-1999, se exime a los contratistas y a cualquier agencia, instrumentalidad, corporación pública y/o entidad adscrita a la Rama Ejecutiva del Gobierno de Puerto Rico de cumplir con cualquier requisito impuesto por ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental".

SECCIÓN 3ra. Las agencias concernidas tendrán 90 días después de que concluya la emergencia y se normalicen las operaciones para requerir, obtener y/o suplementar los documentos y/o cumplir con cualquier requisito establecido por ley, reglamento, orden administrativa o directriz aplicables para que se pueda continuar con los servicios otorgados en virtud de esta Orden Ejecutiva.

SECCIÓN 5ta. Cualquier obligación suscrita en o luego de la vigencia de la Orden Ejecutiva Núm. 2017-047, Boletín Administrativo Núm. OE-2017-047, y hasta que concluya la emergencia y se normalicen las operaciones del Gobierno se considerará exenta del cumplimiento de cualquier requisito dispuesto en ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental.

4. A consecuencia del paso del huracán María por la Isla, la Autoridad de Energía Eléctrica suscribió un contrato de Emergencia con Cobra Acquisitions LLC para la reconstrucción del sistema eléctrico.

5. **El primer contrato de emergencia se estableció el 19 de octubre de 2017, el contrato número 2018-P00028, por un monto por la cantidad de $200,000,0000, para la reconstrucción y reparación del sistema eléctrico del país, tras el paso del huracán María por la Isla. El monto final del contrato fue por la cantidad de $945,588,192.00.**

6. **Según se desprende de la página del Registro de Contratos del Contralor este contrato tenía una vigencia del 20 de octubre de 2017 al 20 de octubre de 2018.**

7. Ese primer contrato se tituló como sigue:

2018-P0028

GOVERMENT OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY

EMERGENCY MASTER SERVICES AGREEMENT FOR PREPA'S ELECTRICAL GRID REPAIRS-HURRICANE MARIA

8. Antes del vencimiento del primer contrato, la AEE y Cobra enmendaron este primer contrato suscribiendo un

segundo en el 1 de noviembre de 2017, contrato núm., Registro de Contratos del Contralor 2018-PO 0170, en el que se especificaba que no podía exceder de la cantidad de $900,000,000. El monto final de este segundo contrato fue por una cantidad menor $366,713,205.19, una disminución de $533,286,794.81 del monto original del contrato.

9. Cobra Acqusitions LLC formalizó una póliza eventual, número 18-2-20-01647, para asegurar los trabajos de este segundo contrato, por el monto reportado de nómina de $900,000,000.00.

10. El 31 de enero de 2022, la División de Seguros e Intervenciones, Región de Bayamón, rindió un informe al Administrador del Fondo sobre la auditoría efectuada por esa división a los anteriores contratos y que dio base a la factura al cobro apelada.

11. El **primer contrato** núm., Registro de Contratos del Contralor **2018**-**P00028**, tenía la siguiente cláusula:

A. Worker Compensation Insurance

**The Cotractor shall provide Workers Compensations Insurance as required y the Workmen's Compensation Act of the Commonwealth of Puerto Rico, <u>or in case of emergency short term work, a policy from the contractor's state of operation shall be accepted</u>. The Contractor shall be responsible for compliance with said Workmen's Compensation Act by all his subcontractors, agent, and invitees.**

**The Contractor shall furnish PREPA a certificate from the State Insurance Fund showing that all personnel employed in the work are covered by the Workmen's Compensation Insurance, in a accordance with this Contract.**

12. El segundo contrato núm., Registro de Contratos del Contralor 2018-P00170, tenía la siguiente cláusula:

> ARTICLE 12: Insurance and Bonds The Contractors shalt obtain and maintain in full force and effect during the life of this Contract and thereafter as provided herein, policies of insurance covering all operations engaged in by the Contract, which shall be formally are with insurance companies authorized to do business in Puerto Rico, and to that the effect it shall provide in original certificates of insurance and endorsements as follows. <u>Commonwealth of Puerto Rico Workers Compensation Insurance The Contractor shall provide workmen's compensation insurance as required by Act No. 45 of April 18, 1985, as amended, known as the Workmen's Compensation Act of the Commonwealth of Puerto Rico ("Act 453k). Contractor shall also be responsible for compliance with Act 45 by all its subcontractors, agents and invitees have obtained said policies on their own behalf. Contractor shall furnish to PREPA a certificate from the Puerto Rico's State Insurance Fund showing that all personnel employed in the work are covered by the workmen's compensation insurance, in accordance with this Contract.</u>

13. Cobra Acquisitions LLC solicitó vista sobre el procedimiento de auditoría que se llevó a cabo y expuso sus objeciones a las determinaciones del informe de auditoría.

14. Así la División de Seguros e Intervención rindió una segunda comunicación a Cobra.

15. En su escrito de 11 de abril de 2024, la representación legal de Administrador admite que el Reglamento para Gobernar el seguro aplicable a los hechos del caso es el Reglamento 8986 y no el Reglamento 9220. El Reglamento 8996 no contiene ninguna disposición sobre Intervención de pólizas.

16. De la información y documentos que ambas partes acompañan con sus escritos se establece un claro incumplimiento de áreas esenciales de las Normas y Procedimientos para el Trámite de Intervención de Póliza del Fondo del Seguro del Estado, 30-03-08, de 14 de noviembre de 2012 y que es de aplicación al caso.

17. **En su intervención al patrono Cobra, el Fondo nunca consideró qué efecto, si alguno tenía, el que el Contrato fue uno de Emergencia y contenía una cláusula que permitía a Cobra operar por la emergencia con su seguro obrero de su estado.**

18. **En su intervención al patrono Cobra, el Fondo nunca consideró qué efecto, si alguno tenía, el Boletín Administrativo Número: OE-2017-053 del 28 de septiembre de 2017, en la contratación entre AEE y Cobra. Además, de qué efecto, si alguno, en los requisitos del seguro obrero.**

19. **Para su segundo contrato con energía eléctrica, el cual fue una enmienda al primero antes del vencimiento de este, sacó una póliza eventual para asegurar los trabajadores de ese contrato inicial de $900,000,000. El cual luego se redujo a un monto final de $366,713,205.**

20. La **póliza eventual**, Núm. 18-2-20-1647, **se formalizó el 1 de diciembre de 2017**. El 12 de junio de 2018, se solicitó una extensión de vigencia de póliza eventual. Se informa que tuvo un pago total de $14,467,968.

21. El Informe de Nómina Investigada se refiere a la Póliza eventual Núm. 18-2-20-01647.

22. En la comunicación de CPA Verónica Malavé por conducto de la Sra. Bárbara A. Lago Amparo, Jefe de División de Seguro e Intervenciones Región Bayamón, de 31 de enero de 2022, esta explica con cálculos de fórmulas las deficiencias por ella encontradas de los trabajos sin informar nómina, como de contratista, y de otros asuntos. En todos sus cálculos se refiere a que se utilizó como base para estimar la nómina el 25% por el aplicable a la clasificación 6009-265, Sistema de Alumbrado.

23. A lo que se refiere la auditora es al Reglamento 3345 de 1986, Reglamento para Determinar los Porcientos de Mano de Obra en Trabajos Sujetos a Pólizas Eventuales, tabla de la Regla 3.2 de dicho Reglamento.

24. La auditora a cargo de la auditoría, CPA Verónica Malavé Hernández, envió a Cobra un correo electrónico en 4 de febrero de 2022, donde exponía sus hallazgos con documentación de trabajo que, según la comunicación, sustentaba las deficiencias por ella señaladas.

25. La comunicación advertía que recibiría una notificación oficial de la auditoría, de la evidencia sometida por el Asegurador. Ese documento no se produjo a nuestra atención y tampoco al patrono.

26. Ya, antes de esa comunicación de la auditora, el Administrador había emitido Factura al Cobro por las alegadas deficiencias del patrono el 1 de febrero de 2022.

27. El patrono solicitó vista administrativa el 7 de marzo de 2022 sobre la Factura al Cobro, y con solo la comunicación del correo electrónico de la auditoria sin que el Fondo le hubiese enviado el Informe de Nómina Investigada CFSE-0609.

28. Se nos presenta en el escrito del Fondo un informe de nómina investigada sin la firma del supervisor de intervenciones y sin la firma del oficial de liquidaciones en claro incumplimiento con las Normas y Procedimientos para el Trámite de Intervención de Póliza del Fondo del Seguro del Estado, 30-03-08, de 14 de noviembre de 2012, en específico en su inciso B, 9, 10 y 12,

29. El Fondo celebró vista informal en el caso el 19 de mayo de 2022, luego de varias comunicaciones entre el Fondo y los representantes legales de Cobra. El 27 de febrero de 2023 el Fondo emite un informe firmado por la jefa de la División de Seguros e Intervenciones.

30. Cobra en su solicitud de vista entrega información sobre contratistas y sus pólizas. El Fondo nada dice sobre si la analizó o no.

31. Del informe de Nómina Investigada, no firmado por dos funcionarios requeridos, no aparecen los apartados 4, 6 y 7 que corresponden a áreas esenciales para determinar la liquidación y deuda de un patrono, estos son respectivamente, (4) Menos contratos asegurados durante el transcurso de la obra, (6) Nómina estimada al formalizarse la obra, (7) Nómina Informada por el patrono.

32. Para su Factura de Cobro, el Fondo unió los servicios de los dos contratos sin especificar a los contratistas que le imputó a Cobra como empleado y a cuál contrato fue que rindieron servicios.

33. Entre los argumentos que Cobra levantó en su vista estaba que al ser un Patrono Eventual la estimación de su nómina se debe a base de los salarios pagados y no el monto total del contrato. El Fondo en su respuesta establece que Cobra, <u>no es un Patrono eventual y que la estimación de la nómina en ambos casos es igual</u>.

34. **<u>Cobra</u> en efecto, <u>es</u> <u>un</u> <u>Patrono</u>, como el Fondo siempre lo trató, <u>temporero</u>, <u>eventual</u> <u>al</u> <u>cual</u> <u>correspondía</u> <u>en</u> <u>su</u> <u>momento</u> <u>la</u> <u>liquidación</u> <u>de</u> <u>su</u> <u>póliza</u> <u>de</u> <u>acuerdo</u> <u>con</u> <u>las</u> <u>disposiciones</u> <u>del</u> <u>Reglamento</u> <u>8698</u> <u>para</u> <u>Gobernar</u> <u>al</u> <u>Seguro</u> <u>en</u> <u>su</u> <u>apartado</u> <u>D</u> (<u>2</u>). <u>En</u> <u>el</u> <u>se</u> dispone:**

   2. **<u>Liquidación</u> <u>de</u> <u>Pólizas</u> <u>Eventuales</u> <u>o</u> <u>Temporeras</u>: Al finalizar los trabajos cubiertos por una póliza eventual o temporero con la nómina estimada al formalizar la póliza y que se tomó como base para el cálculo de la prima tasada y cobrada correspondiente al término de duración de los trabajaos. Si la nómina, según fuera revisada resultara mayor que la que sirvió de base de base para la imposición de la prima, el Administrador tasará, impondrá y cobrará primas adicionales en la misma forma y sobre la misma base usada para la tasación y recaudación de las primas originales. Si la nómina fuera menor que la que sirvió de base para tasar, imponer y cobrar las primas, el Administrador reembolsará o acreditará, sin intereses, el patrono la proporción de las primas correspondientes a la diferencia entre la**

**nómina actual y aquella que sirvió de base para tasar, imponer y cobrar las primas originales, siempre y cuando el Administrador pueda comprobar a su entera satisfacción que los jornales, sueldos y otras remuneraciones declaradas por el patrono o consignados en sus libros son correctos y corresponden con la nómina verdadera del patrono.**

35. El Fondo contestó que, aunque se le formalizó una póliza eventual en el segundo contrato con la AEE, conforme a la práctica ordinaria en el área de seguros, de acuerdo a nuestra reglamentación (la cual no cita) para estimar la prima a pagar se toma como base el monto total del contrato, descontándole los subcontratos asegurados.

36. El apartado H (2) de ese mismo reglamento dispone:

Todo patrono deberá radicar su Declaración de Nómina a la fecha de vencimiento de la póliza eventual, informando las nóminas o remuneraciones pagadas a sus empleados u obreros hasta la fecha de terminación de la obra (Énfasis nuestro).

Conforme a las anteriores determinaciones de hechos, la Comisión concluyó que la CFSE no podía cobrarle a COBRA el monto del primer contrato de octubre de 2017 a mayo de 2018 por estimado de nómina ni por ningún subcontratista utilizado durante dicho periodo y que la CFSE debería liquidar la póliza eventual como dispone el Reglamento para Gobernar el Seguro. Además, sobre la póliza eventual la Comisión enfatizó que, si se identificaba alguna deficiencia o algún sobrante, se debería notificar conforme el procedimiento reglamentario establecido para ello. En lo pertinente, al primer contrato suscrito entre COBRA y la AEE, la Comisión, en sus conclusiones derecho, razonó que el término de menos de tres meses sin tener póliza de trabajadores en Puerto Rico durante el periodo de la exención por la emergencia y el poder utilizar la póliza del estado durante esos tres meses, era un término razonable en cuanto a la emergencia surgida y declarada en Puerto Rico. Sobre estos extremos la Comisión reiteró en la *Resolución* que en última instancia la obligación principal del Sistema de Compensaciones a Obreros es que todo trabajador esté asegurado en el riesgo correcto. En síntesis, la Comisión concluyó expresamente lo siguiente:

"En el estado de emergencia creado y avalado por la Ley de Emergencia 20 y por la OE-2017-053, la cual era la Ley

vigente al momento de la emergencia era perfectamente legal que Cobra utilizara la póliza de seguro de s estado. El Fondo está impedido de recobrar póliza por este período de tiempo. No procede el reembolso del pago de la póliza eventual de $14,000,00 a Cobra.

Sobre la Intervención de la Póliza Eventual Núm. 88998 del segundo contrato, se devuelve el caso al Fondo del Seguro para proceder con la liquidación de estas, cónsono con las instrucciones que aquí se notifican.

1. No se cobrará por el monto del primer contrato de octubre a mayo de 2018 por estimado de nómina por dicho contrato ni por ningún subcontratista utilizado por dicho periodo.

2. Se liquidará la póliza eventual como dispone el Reglamento para Gobernar el Seguro.

3. Si se identifica una deficiencia, siguiendo los procedimientos, así lo notificará.

4. Si se identifica un sobrante, siguiendo los procedimientos, así lo notificará."[24]

En desacuerdo, el 20 de agosto de 2024, COBRA presentó *Solicitud de Reconsideración.*[25] De igual forma, el 21 de agosto de ese año, la CFSE también solicitó reconsideración a la Comisión.[26] Mediante Resolución emitida y notificada 20 de noviembre de 2024, la Comisión declaró No Ha Lugar ambas solicitudes de reconsideración.[27]

Inconforme, la CFSE recurrió ante nos el 17 de diciembre de 2024, mediante la presentación del recurso de epígrafe  y sostiene que la Comisión incurrió en los siguientes señalamientos de error:

> ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL CONCLUIR QUE EL ASEGURADOR ESTABA IMPEDIDO DE REQUERIR EL PAGO POR NÓMINA ESTIMADA EN EL PRIMER CONTRATO SUSCRITO ENTRE COBRA Y LA AEE, NI DE LOS CONTRATISTAS QUE TRABAJARON  PARA COBRA ENTRE OCTUBRE DE 2017 A MAYO DE 2018 Y QUE ESA DETERMINACIÓN ESTABA VALIDADA POR LA ORDEN EJECUTIVA OE 2017-053.  LA DETERMINACIÓN DE LA HONORABLE COMISIÓN INDUSTRIAL ES CONTRARIA A LA ORDEN EJECUTIVA OE2017-072, QUE TIENE FUERZA DE LEY, QUE DEJÓ SIN EFECTO LA DISPOSICIÓN PRIMERA DE LA OE-2017-053 QUE EXIMÍA A LOS CONTRATANTES CON EL GOBIERNO DE CUMPLIR REQUISITOS IMPUESTOS POR LEY O REGLAMENTOS.  ESA MISMA OE2017-072, DISPUSO QUE TODOS LOS CONTRATISTAS ESTABAN OBLIGADOS A CUMPLIR CON TODOS LOS REQUISITOS DE LEY, REGLAMENTOS U ÓRDENES A PARTIR DEL 8 DE DICIEMBRE DE 2017.

---

[24] *Íd.*, págs. 538-539.
[25] *Íd.*, págs. 541-623.
[26] *Íd.*, págs. 624-632.
[27] *Íd.*, págs. 661-665.

ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL CONCLUIR QUE EN EL PRIMER CONTRATO SE PACTÓ LA APLICACIÓN DE LA LEY DEL ESTADO DE COBRA EN CUANTO AL SEGURO OBRERO Y QUE BAJO LA OE-2017-053, ERA LEGAL QUE COBRA UTILIZARA LA PÓLIZA DE SEGURO OBRERO DE SU ESTADO. ESTA DETERMINACIÓN ES CONTRARIA A LOS ARTÍCULOS 12, 29 Y 35 DEL CONTRATO 2018-P00028 SUSCRITO EL 19 DE OCTUBRE DE 2017.

En respuesta, el 15 de enero de 2025, COBRA compareció ante nos mediante *Alegato en Oposición a Recurso de Revisión.* En ajustada síntesis, la Recurrida sostiene que la Comisión no incurrió en el primer error señalado por la CFSE, Razona COBRA que una interpretación contraria a lo resuelto por la Comisión tendría el efecto de enmendar el primer contrato suscrito entre la AEE y COBRA sin el consentimiento de las partes y que tal interpretación hubiese supuesto, en momentos de emergencia, la descontinuación de los servicios mientras se le requería a COBRA el cumplimiento de requisitos no contemplados en el contrato. En lo pertinente al segundo señalamiento de error, COBRA sostiene que en la Cláusula 12 del primer contrato con la AEE las partes pactaron que el contratista debía obtener una póliza de seguro obrero, según requerida por la Ley Núm. 45-1945, y acordaron autorizar a que se obtuviera dicha póliza de seguro obrero en el lugar de origen de COBRA, mientras se realizaba trabajo de emergencia a corto plazo.

## II.

### A. *Revisión Judicial de Determinaciones Administrativa*

La revisión judicial de las decisiones administrativas tiene como fin garantizar que los ciudadanos tengan un foro al cual acudir para vindicar sus derechos y para obtener un remedio frente a posibles actuaciones arbitrarias. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 435 (1997); *Hernández Denton v. Quiñones Desdier,* 102 DPR 218, 223-224 (1974). Este proceso "forma parte de un trámite apelativo cuyo diseño responde al principio constitucional de mayor acceso a los tribunales". *Ríos Martínez,*

*Com. Alt. PNP v. CLE,* 196 DPR 289, 302 (2016) citando a *Méndez v. Corp. Quintas San Luis,* 127 DPR 635, 637 (1991).

La Ley Núm. 38 de 30 de junio de 2017, según enmendada y mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* ("LPAU"), 3 LPRA sec. 9601 *et seq.,* dispone el alcance de la revisión judicial de las determinaciones de las agencias. Sec. 4.5 de la LPAU, *supra.* Tanto la referida Ley como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC v. Caguas Centrum,* 148 DPR 70, 80 (1999).

Ahora bien, "es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos debemos conceder deferencia a las decisiones de las agencias administrativas". *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016). Esto se debe "a la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado". *Íd.* (Escolio omitido). Es sabido que las determinaciones de una agencia administrativa gozan de una presunción de corrección. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019).

> [L]os foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020). *(Cita omitida)*

A tenor con lo anterior, los tribunales deben deferencia a las agencias administrativas salvo que: (1) las determinaciones no estén basadas en evidencia sustancial; (2) las conclusiones de derecho fueran incorrectas; (3) la agencia actuara de forma arbitraria, irrazonable o ilegal; o (4) que lesionara derechos

fundamentales. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021)*; Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otro, supra; ECP Incorporated v. OCS,* 205 DPR 268, 281-282 (2020).

Por consiguiente, la deferencia cede, por ejemplo, cuando la agencia no se fundamenta en evidencia sustancial. "A esos fines, evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Capó Cruz v. Jta. de Planificación et al., supra.*

> Es decir, como excepción los tribunales pueden intervenir con las determinaciones de hechos de una agencia *cuando no están sustentadas por el expediente*, ya que el foro judicial no debe sustituir su criterio por el del foro administrativo si hizo una interpretación razonable de los hechos. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1027 (2020). (Citas y comillas omitidas). (Énfasis suplido).

"Por su parte, las determinaciones de derecho pueden ser revisadas en su totalidad". *Capó Cruz v. Jta. de Planificación et al., supra*

### B. Ley de Compensaciones por Accidentes del Trabajo

La Carta de Derechos de nuestra Constitución establece que todo trabajador tiene el derecho de estar protegido contra riesgos a su salud en su trabajo o empleo. Art. II, Sec. 16, Const. PR, LPRA, Tomo 1. Por ello, y reconociendo el principio de que el riesgo de sufrir accidentes del trabajo es uno de tipo fundamental que necesariamente requiere acción gubernamental, la Asamblea Legislativa por virtud de la Ley Núm. 45 del 18 de abril de 1954, mejor conocida como la *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* según enmendada, 11 LPRA Sec. 1, et seq., creó la Corporación del Fondo del Seguro del Estado ("CFSE"). A

través de esta entidad, se "provee en favor de los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos, un remedio económico y médico para compensar la incapacidad productiva que sobreviene como consecuencia de un accidente o enfermedad ocupacional". *Saldaña* Torres. *v. Mun. San Juan*, 198 DPR 934 (2017); Artículo 2 de la Ley Núm. 45, 11 LPRA Sec. 2. Así pues, un obrero o empleado que sufra una lesión o enfermedad ocupacional tendrá derecho a: asistencia médica, incapacidad transitoria, incapacidad parcial permanente, incapacidad total permanente, o compensación en caso de muerte. 11 LPRA sec. 3.

El carácter remedial de la Ley Núm. 45, *supra*, tiene como política pública y norma general que el patrono posea inmunidad contra acciones de daños y perjuicios por accidentes laborales, siempre y cuando sea uno asegurado, o sea que haya cumplido con sus disposiciones**.** *Marrero Cancel v. Caribbean Hosp. Corp., et al*, 156 DPR 327, 332 (2002). Así, el Artículo 16 de la Ley Núm. 45, 11 LPRA Sec. 19, dispone en lo pertinente que "[t]odo patrono de los comprendidos dentro de las disposiciones de esta Ley estará obligado a asegurar a sus obreros o empleados en la Corporación del Fondo del Seguro del Estado la compensación que éstos deban recibir por lesiones, enfermedad o muerte [...]". Por ello, será deber de todo patrono el presentar al Administrador, no más tarde del 20 de julio de cada año, un estado que detalle el número de trabajadores que emplea, la clase de ocupación o industria de estos y la cantidad total de jornales pagados a los mismos durante el año económico anterior. Sobre tal declaración, se computará la cuota a ser pagada por el patrono, cuyo pago deberá acompañarle. Artículo 23 de la Ley Núm. 45, 11 LPRA Sec. 26; *Martínez v. Bristol Myers, Inc.*, 147 DPR 383, 393 (1999). La Ley Núm. 45, así como su jurisprudencia interpretativa, disponen que aquel patrono que no

cumpla con esta obligación será considerado como un patrono no asegurado.

Conforme al esquema de la CFSE, el patrono asume el riesgo de la lesión, entendiéndose que su responsabilidad es absoluta y el empleado que se acoge a la CFSE por un accidente del trabajo no tendrá que probar que hubo negligencia de parte del patrono como causa de la lesión o enfermedad, por lo que es inmaterial que el accidente haya ocurrido a consecuencia de la negligencia del patrono, de un tercero, o hasta del propio empleado. *Guzmán y otros v. E.L.A.,* 156 DPR 693 (2002). Es decir, el empleado recibe compensación independientemente de quién sea responsable por el accidente. La legislación evita que el empleado tenga que enfrentar las dificultades de una reclamación civil ante los tribunales, donde tendría que probar el elemento de culpa o negligencia. *Id.* A cambio de esta protección, el patrono asegurado recibe inmunidad contra cualquier reclamación civil en daños y perjuicios que pueda entablar el empleado lesionado en su contra. *Íd. González v. Multiventas,* supra, págs. 881-882.

La jurisprudencia del Tribunal Supremo de Puerto Rico que enfatiza en el carácter absoluto de la inmunidad patronal y es el remedio provisto por el Fondo el único remedio disponible para el empleado lesionado. *Guzmán y otros v. E.L.A.,* supra; *Hernández Sánchez v. Bermúdez & Longo, S.E.,* 149 D.P.R. 543 (1999); *Admor., FSE v. Flores Hnos. Cement Prods., Inc.,* 107 D.P.R. 789 (1978). Por excepción, la inmunidad patronal no aplica en aquellas situaciones en las que el daño sufrido por el obrero se deba a un acto intencional o discriminatorio de parte del patrono. Ante este tipo de actuación del patrono, se le reconoce al empleado afectado una causa de acción para reclamarle civilmente a su patrono. (Citas omitidas). *González v. Multiventas,* supra, págs. 882-883.

En lo pertinente al caso que nos ocupa, Artículo 16 de la Ley Núm. 45 *supra,* dispone que, todo patrono de los comprendidos dentro de las disposiciones de la Ley de Compensaciones estará obligado a asegurar a sus empleados en la CFSE la compensación que estos deban recibir por lesiones, enfermedad o muerte.  Cuando el patrono asegure a sus obreros y empleados de acuerdo con la ley, el derecho estatutariamente establecido para obtener compensación será el único remedio en contra del patrono y por ende gozará de inmunidad patronal.11 LPRA sec. 21. Cualquier accidente que ocurra antes de verificarse el pago, será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador. Mientras no se haya hecho este pago por el patrono**,** dicho patrono no tendrá derecho a las inmunidades provistas por la Ley con respecto a las lesiones**,** enfermedades o muertes que pudieren ocurrir a los obreros o empleados de tal patrono durante el período que cubre el pago de dichas primas**.** *Íd.*

Además, en el caso de que ocurriere un accidente a un obrero o empleado cuando trabajare para un patrono que en violación de la ley no estuviere asegurado, el Administrador del Fondo determinará la compensación que proceda más los gastos en el caso y cobrará al patrono dicha compensación y gastos para ser ingresados en el Fondo. Art. 13 de la Ley Núm. 45 *supra.*

## B. *Contratos con Entidades Gubernamentales*

Las obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia.  Artículo 1042 del Código Civil de Puerto Rico, 31 LPRA sec. 2992.  Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes y sus causahabientes, y deben cumplirse a tenor de este.  Artículo 1044 del Código Civil, 31 LPRA sec. 2994.  Nuestro

ordenamiento jurídico dispone que los contratos existen cuando concurren los requisitos de consentimiento, objeto y causa. Desde ese momento, producen obligaciones que tienen fuerza de ley entre las partes contratantes. Artículos 1213 y 1044 de Código Civil, 31 LPRA secs. 3391 y 2994.

Debido al gran interés público y la aspiración de promover una sana y recta administración pública, la Asamblea Legislativa ha impuesto requisitos y condiciones adicionales a la contratación con entidades gubernamentales. *Alco Corp. v. Mun. de Toa Alta*, 183 DPR 505(2011). De esta forma, los contratos con entidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de los contratos. *Íd.* Así, para que un contrato con el gobierno tenga fuerza de ley entre las partes, son necesarios los siguientes requisitos: (1) se reduzcan a escrito; (2) se mantenga un registro fiel con mira a *prima facie* establecer su existencia; (3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y (4) que se **acredite la certeza del tiempo**, esto es, haber sido realizado y otorgado quince (15) días antes. *Ocasio v. Municipio de Maunabo*, 121 DPR 37, 54 (1988); *JAAP Corp. v. Depto. Estado et al.*, 187 DPR 730, 741 (2013). En lo pertinente a estos requisitos, todo contrato entre una entidad privada y el Estado debe constar por escrito para que tenga efecto vinculante entre las partes. *JAAP Corp. v. Depto. Estado et al.,* supra, pág. 741. Esto, constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales. *Íd.*, pág. 742; *Colón Colón v. Mun. de Arecibo*, 170 DPR 718 (2007). De esta forma, nuestro Tribunal Supremo ha rechazado la contratación retroactiva y determinó que era necesaria la existencia de un contrato escrito antes de prestar los servicios pactados. *Vicar*

*Builders V. ELA,* 192 DPR 256, 266 (2015). Así, pues, el requisito de un contrato escrito es indispensable para que tenga efecto vinculante entre las partes. *Íd.*, pág. 264. Con relación al requisito de que se remita copia del contrato a la Oficina del Contralor, la Asamblea Legislativa aprobó la Ley Núm. 127 de 31 de mayo de 2004, que enmendó la *Ley de Registros de Contratos*, Ley Núm. 18 de 30 de octubre de 1975 (Ley Núm. 18), 2 LPRA sec. 97 *et seq.* Dicha enmienda tuvo el propósito de establecer que, el requisito de remitir y registrar el contrato a la Oficina del Contralor no tiene el efecto de anular el contrato, aunque impide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a la Oficina del Contralor.   Los preceptos legales y la jurisprudencia interpretativa en materia de contratación con el gobierno persiguen fomentar la eficacia, honestidad y corrección en protección a los intereses del pueblo. *Quest Diagnostics v. Mun. San Juan,* supra, pág. 1002. Para obligar fondos públicos, es necesario seguir los procedimientos establecidos en ley. *Íd.* Reiteradamente se ha expresado que "los entes privados tienen el deber de asegurar el cumplimiento de la ley al contratar con los municipios, o se arriesgan a asumir la responsabilidad por sus pérdidas." *Íd.*, pág. 1002.

Los tribunales vienen llamados a velar por las disposiciones legales dirigidas a proteger desembolsos públicos, ya que protegen el interés público y no el de las partes contratantes." *Íd.*, pág. 1002; *Hatton v. Municipio de Ponce*, 134 DPR 1001 (1994). De igual forma, **debemos mirar con cautela reclamaciones fundadas en acuerdos de contratos**, **en los cuales las autoridades ejecutantes no han dado cumplimiento a los mandatos en ley**. *Alco Corp. v. Mun. de Toa Alta,* supra, pág. 538. (Énfasis nuestro). Solo mediante una evaluación rigurosa de los requisitos de contratación con el

gobierno, queda satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolso de fondos públicos. *Íd.*

### C. *Los Estados de Emergencia*

Al momento de aprobarse la OE-2017-047, el 17 de septiembre de 2017, que declaró un estado de emergencia ante el paso del Huracán María por Puerto Rico estaba vigente la Ley Núm. 211-1999, la cual fue derogada posteriormente. Fue a tenor con el Artículo 15 de la derogada Ley Núm. 211-1999, el cual facultaba al Gobernador a darle vigencia a aquellas medidas necesarias para manejar la emergencia, que el 28 de septiembre de 2017, se aprobó la OE-2017-053. Dicha OE-2017-053 en su Sección 1ra. eximió a los contratistas y a cualquier agencia, instrumentalidad, corporación pública y/o entidad adscrita a la Rama Ejecutiva del Gobierno de Puerto Rico de cumplir con cualquier requisito impuesto por ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental. Asimismo, en su Sección 5ta. la aludida OE-2017-053 dispuso además, que cualquier obligación suscrita en o luego de la vigencia de la OE-2017-047 y hasta que concluyera la emergencia, se consideraría exenta del cumplimiento de cualquier requisito dispuesto en ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental.

Actualmente es la Ley Núm. 20-2017 la que faculta al Gobernador de Puerto Rico, a declarar un estado de emergencia, y a darle vigencia a aquellas medidas necesarias para manejar la emergencia mientras dure la misma. Mediante el Artículo 6.10 de la Ley Núm. 20-2017, 25 LPRA sec. 3650, la Asamblea Legislativa le confirió facultad al Gobernador para emitir órdenes ejecutivas en situaciones de emergencia o desastre y dispuso expresamente lo siguiente:

> **En situaciones de emergencia o de desastre, el Gobernador de Puerto Rico podrá decretar, mediante proclama, que existe un estado de emergencia o desastre, según sea el caso, en todo el territorio de Puerto Rico o en parte del mismo. El Gobernador, mientras dure dicho estado de emergencia o desastre, tendrá, además de cualesquiera otros poderes conferidos por otras leyes, los siguientes:**
>
> (a)….
>
> **(b) Podrá dictar, enmendar y revocar aquellos reglamentos y emitir, enmendar y rescindir aquellas órdenes que estime convenientes para regir durante el estado de emergencia o desastre. Los reglamentos dictados u órdenes emitidas durante un estado de emergencia o desastre tendrán fuerza de ley mientras dure dicho estado de emergencia o desastre.**
> **(c) Podrá darle vigencia a aquellos reglamentos, órdenes, planes o medidas      para situaciones de emergencia o desastre o variar los mismos a su juicio.**

   25 LPRA sec. 3501 (b)(c) (Énfasis nuestro)

Es decir que mediante el Artículo 6.10 incisos (b) y ( c) de la Ley Núm. 20-2017, el Gobernador podrá dictar, enmendar y revocar aquellos reglamentos y emitir, enmendar y rescindir aquellas órdenes que estime convenientes para regir durante el estado de emergencia o desastre. 25 LPRA sec. 3501 (b)(c).  Fue al amparo de esta Ley Núm. 20-2017 que el 8 de diciembre de 2017, se aprobó la OE-2017-072 con el fin de enmendar o dejar sin efecto ciertas secciones del Boletín Administrativo Núm. OE-2017-053. En lo pertinente la OE-2017-072 dejó sin efecto la Sección 1ra. de la OE-2017-053 y enmendó la Sección 5ta de dicha OE-2017-053 y dispuso expresamente que para estar exento del cumplimiento de cualquier requisito de ley la obligación debía haber sido suscrita durante la vigencia de la OE-2017-047 y la OE-2017-053, hasta el 8 de diciembre de 2017, inclusive.

## III.

Es la contención principal de la CFSE que incidió la Comisión al concluir que la Recurrente estaba impedida de requerir el pago por la nómina estimada en el primer contrato suscrito entre COBRA y la AEE, ni de los contratistas que trabajaron para COBRA entre

octubre de 2017 a mayo de 2018. Razona la Recurrente que, sobre estos extremos, la Resolución recurrida es contraria a la OE-2017-072.

Conforme a la Orden Ejecutiva OE 2017-053 aprobada tras la emergencia por el paso del Huracán María, **según enmendada el 8 de diciembre de 2017, por la OE2017-072**, procedía que la CFSE efectuara el recobro correspondiente al pago de seguro obrero **por las enmiendas realizadas al primer contrato suscrito** ente COBRA y la AEE, a partir del 9 de diciembre de 2017. En virtud de la aprobación de la OE-2017-072, la cual enmendó entre otras secciones, la Sección 5 de la referida OE-2017-053, para exigir y restaurar el requisito de cumplimiento con las leyes y reglamentos aplicables en la contratación gubernamental  en obligaciones contraídas luego del 8 de diciembre de 2017, a partir del 9 de diciembre de 2017, cesó la exención conferida por la Sección 5 de la OE-2017-053, por lo que aquellas **enmiendas  al primer contrato entre COBRA y la AEE, que son obligaciones contraídas luego del 8 de diciembre de 2017 quedaron excluidas de la exención conferida anteriormente por la OE 2017-053** que eximió a los contratistas, a agencias, instrumentalidades o corporaciones públicas y a entidades adscritas a la Rama Ejecutiva, de cumplir con cualquier requisito impuesto por ley, reglamento u orden administrativa para regular el proceso de contratación gubernamental durante el término comprendido en la aludida OE 2017-053.

La tercera, cuarta y quinta enmienda al primer contrato fueron suscritas por la AEE el 21 de diciembre de 2017, el 28 de enero de 2018 y el 27 de febrero de 2018, respectivamente. Es preciso destacar que para la fecha en que fueron suscritas dichas obligaciones, ya había entrado en vigor la OE-2017-072, la cual, limitó la exención al cumplimiento con los requisitos de ley a toda

obligación contraída hasta el 8 de diciembre de 2017, inclusive. Ello tuvo el efecto de excluir de la referida exención todas aquellas obligaciones contraídas luego del 8 de diciembre de 2017.

En el caso que nos ocupa, es un hecho incontrovertido que la **tercera**, **cuarta** y **quinta enmienda al primer contrato**, fueron obligaciones contraídas por COBRA y la AEE luego del 8 de diciembre de 2017. Así las cosas, es forzoso concluir que por disposición expresa de la OE-2017-072 las partes contratantes carecían de discreción para eximir a COBRA del cumplimiento con los requisitos de ley aplicables a la contratación gubernamental; entre estos la obtención de la póliza de seguro obrero que provee la CFSE al amparo de la Ley Núm. 45, *supra.*

Cónsono con lo antes expuesto, colegimos que en virtud de la OE-2017-072, **a partir del 9 de diciembre de 2027**, **COBRA <u>no</u> <u>podía</u> utilizar la póliza de seguro obrero de su estado en las enmiendas suscritas al contrato posterior al 8 de diciembre de 2017. Por lo tanto,** venía **obligada a gestionar la póliza de seguro obrero de la CFSE para dichas obligaciones contractuales**.

**En cuanto al segundo señalamiento de error, es preciso destacar que en la Cláusula 12 del primer contrato otorgado entre COBRA y la AEE estas pactaron** que el contratista debía obtener una póliza de seguro obrero, según requerida por la Ley Núm. 45-1945, y acordaron autorizar a que se obtuviera dicha póliza de seguro obrero en el lugar de origen de COBRA, mientras se realizaba trabajo de emergencia a corto plazo. Toda vez que dicho contrato se firmó el 19 de octubre de 2017, durante la vigencia de la OE-2017-053, que eximió a los contratistas y demás entidades del cumplimiento con las disposiciones legales pertinentes en la contratación gubernamental durante la vigencia de la emergencia, así declarada, COBRA estaba autorizada a obtener la póliza obrera de su estado para todas aquellas obligaciones contraídas hasta el 8

de diciembre de 2017, toda vez que dicha exención cesó en esa fecha, a partir de la aprobación de la OE-2017-072.

Si bien tal y como está formulado, el segundo error no se cometió, procede modificar la Resolución recurrida, por los fundamentos expresados en la discusión del primer error señalado por la CFSE. Reiteramos que en toda obligación contraída antes de la vigencia de la OE-2017-072 COBRA podía a adquirir la póliza de seguro obrero de su estado, en virtud de la exención conferida por la Sección 1ra y 5ta. de la OE-2017-053. **Ello incluye el primer contrato**, **suscrito el 19 de octubre de 2017 y las enmiendas primera y segunda al primer contrato**, **ya que fueron obligaciones suscritas en o antes el 8 de diciembre de 2017**, **fecha en que se aprobó la OE-2017-072**, **la cual dejó sin efecto la aludida exención conferida en la OE-2017-053**, **en obligaciones suscritas a partir del 9 de diciembre de 2017**. Antes de esa fecha COBRA podía tomar la póliza de seguro obrero de su estado, contemplada en el primer contrato para situaciones de emergencia en contratos a corto plazo, y en las enmiendas primera y segunda a dicho contrato, suscritas el 1 de noviembre y 8 de diciembre de 2017, toda vez que estaba todavía cobijada por la exención conferida en la OE-2017-053.

### IV.

Por los fundamentos anteriormente expuestos, los cuales se hacen formar parte de esta Sentencia, se modifica la Resolución recurrida emitida por la Comisión, a los únicos efectos de revocar aquellos extremos de la Resolución en los que la agencia recurrida concluye que la CFSE estaba impedida de requerir el pago por la nómina estimada por las enmiendas al primer contrato, suscritas por COBRA y la AEE a partir del 9 de diciembre de 2017. La CFSE podía requerir el referido pago por las enmiendas al primer contrato suscritas por COBRA y la AEE después del 8 de diciembre de 2017.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones